UNITED STATES DISTRICT COURTS
EASTERN DISTRICT OF NEW YORK



RECEIVED
DEC - 5 2016
PRO SE OFFICE

Lucio Celli,                                          )
)
                    Plaintiff,                        )
)
          vs.                                         )
)
Mr. Richard Cole, Ms. Anne Bernard, and              )
)
Board of Education A/K/A New York City               )
)
Department of                                        )
)
Education, all sued in their official and            )
)
individual capacities.                               )
)
                    Defendants                        )

MOTION TO RECUSE
Memorandum of Law to support
Case No.: 15-cv-3679 ( BC-LB )

## INTRODUCTORY STATEMENT

Lucio Celli, as plaintiff in the above-referenced civil matter and represents himself as pro se litigant, moves to disqualify Judge Brain Cogan from the above-entitled matter under 28 U.S.C. § 455(a) and (b)(2), and Marshall v Jerrico Inc., 446 US 238, 242, 100 S.Ct. 1610, 64 L. Ed. 2d 182 (1980). Plaintiff, further, moves to disqualify Judge Brain Cogan from the above-referenced matter pursuant to 28 U.S.C. § 144. Plaintiff alleges 9 grounds for recusal:

(1) distortion of facts to support white-collar crimes by calling the conduct of fraud being "unfair and acceptable conduct for any employer"; (2) distortion of facts as it concerns Administrative Law Judge Angela Blassman because Judge Cogan distorted the conduct of Blassman as she ruled on a matter, but the fact of the matter is, Lucio audio recorded Blassman being deceitful about the availability of a motion under NYSPERB—Blassman never ruled on the motion for particularization,

but told Lucio that the said motion was not for the Charging Party Lucio; (3) Judge Cogan threatened to dismiss Lucio's complaint again, if Plaintiff did not adhere to the judge's idea to pigeonhole his complaint into a complaint based solely on race and disability without retaliation and harassment, which was based on race and disability; (4) Judge Cogan's attempted to dupe the Plaintiff into being believing that Lucio could not bring a cause of action under Section 301 of the Labor Management Relations Act against Lucio's employer; (5) Judge Cogan threatened to dismiss the complaint, if the Plaintiff added the contractual violations under the Taylor Law, but Lucio's 42 U.S.C. § 1981 claim is based on contractual violations predicated on race—same coin but different sides of the coin; (6) Judge Cogan ignored the fact that Lucio audio recorded the Defendants as they blamed the United Federation of Teachers for the submission of fraudulent documents on May 5, 2015— with a threat to dismiss if added the UFT; Judge Cogan ignored the fact that Lucio audio recorded Susan Sedlmeyer, of the UFT, telling Lucio that his union agreed to deny all members the opportunity to present evidence at Loudermill hearings; (7) the Judge Cogan ignored all facts (audio recorded) that are total violation of rights found in Cleveland Board of Education v. Loudermill—with a threat to dismiss the complaint, if Lucio plead facts with any particularity; and (8) the Judge Cogan totally ignored Federal Law in favor of Blassman and Morelli's/Tand (Lucio audio recorded Morelli) because they (Blassman,

Morelli, and Tani) have a criminal scheme to affect the pending lawsuit and its outcome before this Court..

## STATEMENT OF FACTS

This case involves a civil suit brought by pro se litigant, Lucio Celli against above named Defendants for alleged violations of Title VII and other Federal and State +statutes. The subject matter involves the alleged contractual violations based on race by Cole and Bernard, and perceived mental disability by Laboy-Wilson. The complaint Judge Brain Cogan dismissed indirectly implicates the interests of the United Federation of Teachers and Randi Weingarten, President of the United Federation of American Teachers. Randi Weingarten and Judge Brain Cogan were coworkers at Stroock, Stroock, Lavin LLC and part of the controversy stem from Loudermill hearing that Stroock, Stroock, Lavin LLC profits from as the UFT contacts legal problems that stem from the Loudermill hearing.

The Honorable Brain Cogan has been assigned as the presiding judge. The trial is set to commence July 17, 2000. The Plaintiff believe, with good reason, that Judge Cogan read Luico's complaint through Ranid Weingarten eyes because Judge Cogan abused his discretion by limiting the complaint's length with a threat and did not consider statutes or caselaws for Title VII/1981/1983 as he dismissed the complaint on October 23, 2016. Plaintiff is under the assumption that Court making findings must be predicated upon facts and determinations of law, which Judge Cogan did not do any prior to dismissing the complaint.

Plaintiff understands that Judge Brain Cogan's association with United Federation of Teachers and Randi Weingarten does not warrant a recusal by itself, but the Judge Brain Cogan's abuse of discretion, the way the Judge turned a white-collar crime into being unfair and ok by the

employer, and his lack to adherence towards caselaws under Title VII/1981/1983 should warrant a recusal because blatantly favored Defendants by trying to dupe Lucio into believing that a white-collar crime is allowable under any law. Judge Brain Cogan conduct and statement is outrageous for anyone that respects the law, which Judge Cogan did not appear to respect the law as he dismissed the complaint on October 23, 2016.

That revelation came at the time when the judge dismissed the complaint because Judge Brain Cogan comments were blatantly in favor of people that falsify documents, conceal documents, cite fake arbitration decisions, deprive their employees of due process, and cite fake work rules—which Judge Brain Cogan said that these action are merely unfair...Lucio pleaded white-collar crime under Rule 9 for fraud and NYS has laws to correct this crime! Judge Cogan continuing to sit as the preceding judge, even though the white-collar crimes predicated on the interest of Untied Federation of Teachers and Randi Weingarten.

Judge Brain Cogan comments are too specific and appears to protect and insulate the United Federation of Teachers and Angela Blassman of New York State Public Relations Board from ligation because Judge Cogan misled Lucio about tangible employment actions taken after Lucio complained about racial discrimination and during the EEOC investigation because Judge Cogan threatened to dismissed the complaint if Lucio added the claims again—this is blatant favoritism for the Defendants because there are clear caselaws in this realm and all related to UFT and PERB.

## I. ARGUMENT

1. Where an extrajudicial false accusation of a deeply personal and profession nature has been made by the Court against counsel prior to his ascending the bench, but manifests itself in his current hostile and antagonistic frame of mind in a matter over which he is currently presiding, Section 455 (a) of Title 28 mandates that the Court "shall disqualify himself" since his impartiality might reasonably be questioned.

Added to the clear language of Section 445, which requires disqualification where the court's impartiality might reasonably be questioned, is the forceful holding of the U.S. Supreme Court in Liteky v. U.S., 510 U.S. 540, 557 (1994), clearly requiring disqualification under the circumstances presented here:

"Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." For present purposes, it should suffice to say that Section 455 (a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or finding" on P. __.

The Second Circuit and the Southern District have repeatedly invoked these objective standards in defining the basis for recusal. Gil Enterprises, Inc. v. Delvy, 79 F.2d 241 (2d Cir. 1996); U.S. v. Occhipinti, 851 F. Supp. 523 (SDNY, 1993). As acknowledged in Grodin v. Random House, Inc., 61 F. 3d. 1045 at 1053, citing appropriate language in Liteky: "deep seated antagonism makes fair judgment impossible." Like Judge Cogan's favoritism of Defendants who have committed white-collar crimes.

The basis for recusal here is premised on an extraordinary false accusation that Lucio did not know what is unfair under Title VII and what is merely unfair. Lucio alleged that the Defendants

committed white-collar crime against him and he has audio recordings and documents to submit to the Court, which is outrageous for Judge Cogan to call white-collar crimes as being merely being unfair and ok for employers to do. Lucio believes that Judge Cogan's threaten to limit Lucio's complaint under Rule 8 versus Rule 9 is to allow fraud to go unchecked by any judicial system and to aid the Defendants get away with white-collar crimes. It was, and is, a personal attack that is extrajudicial. See U.S. v. Serrano, 607 F.2d 1145 (5th Cir. 1979) and U.S. v. Zagaire, 419 F. Supp. 494 (N. Dist. Cal. 1976), where specific note is taken that extrajudicial attacks of a personal nature are the strongest basis for granting relief.

Nor does it matter that the Court fails to recall the specifics of the event in question: "The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible. The judge's forgetfulness, however, is not the sort of objectively ascertainable fact that can avoid the appearance of partiality." Lilyeberg v. Health Services Acquisition Corp., 486 U.S. 847, 871 (1988).

2. Where the law firm of a judge advised the UFT, who is not named presently, over a period of years, and the instant litigation involves that UFT's interests at Loudermill hearings, the judge must disqualify himself pursuant to 28 U.S.C.(b)(2)

The plain language of 28 U.S.C. 455(b)(2) is clear:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

In discussing the import of ¤ 455(b), Chief Justice Rehnquist noted, in his dissent, in Lilyeberg v. Health Services Acquisition Corp., 486 U.S. 847, 871 (1988) that:

"Subsection (b) of ¤ 455 sets forth more particularized situations in which a judge must disqualify himself. Congress intended the provisions of ¤ 455 (b) to remove any doubt about recusal in cases where a judge's interest is too closely connected with the litigation to allow his participation."

It is undisputed that the Stroock, Stroock, Lavin LLC advised the UFT about the outcomes of Loudermill hearings for UFT members, presumably on procedural violation (which Plaintiff has an email from the UFT), for a number of years. It is also clear that Judge Cogan was part of the firm during the time the UFT started to deprive their members of their Loudermill rights.

It appears that Judge Cogan is helping the UFT:

| DOE | UFT |
|---|---|
| Lucio emailed Bernard on June 19, 2014 about the | On June 27, 2014, Adam Ross, Esq., General Counsel |

position in her program, but she did not respond to the email.

Lucio emailed Bernard on June 20, 2014 about less senior teachers were selected for summer school positions, but she did not respond to the email.

Lucio emailed Bernard on June 23, 2014 about the UFT's position to grieve her violation of the contract. Finally, Bernard responded with **"Dear Mr. Celli: Kindly contact me regarding your rating sheet and your performance this school year."**

Again on June 23, 2014, Lucio

for the UFT emailed Lucio with information about grieving Cole's illegal rubric. However, Ross pretended to be a lawyer from the NYSUT.

emailed Bernard about the summer school position, this is where Bernard further emailed Lucio about summer school saying, **"Dear Mr. Celli, Please be advised that you do not have retention rights to summer school."**

On June 26, 2014, Lucio had sent Bernard 3 requests and provided her with Cole's misconduct predicated on racial animus. In the said email, Lucio asked for the second checklist observation and the rubric created by Cole. In response to my requests, Bernard responded, in a retaliatory manner, with the following email:

**Dear Mr. Celli:**

**On Wednesday, June 25th, I was at your site at 6:00 pm and you were not in your classroom. Upon my departure at 6:35 pm, I observed you walking off the evaluator and walking towards your classroom. In the future, it is imperative that you arrive to work on time."**

Please Take Notice, Lucio informed Cole of his late arrival and the school year ended on June 25, 2014. Therefore, Bernard's email about Lucio's lateness was retaliatory because the school year ended and Lucio could no longer work in Bernard's

| | |
|---|---|
| program. | |
| On July 14, 2014, Lucio emailed Ms. Susan Mandel, Esq., attorney in the Office of Labor Relations for the Defendants, Lucio complained about racial discrimination that he experienced with Mr. Cole and Ms. Bernard

In addition, Mandel wrote falsehoods into grievance decision for grievance X55911 as retaliatory for complaining about racial discrimination because the UFT acknowledged to Lucio that this type of grievance is always won by the UFT and the fact that Mandel falsified a grievance decision as | On December 8, 2014, Lucio met with Saul Zalkin, of the UFT, where he stated, "the UFT will not process your grievances until the outcome of your appeal."
Please Take Notice, Saul Zalkin described the "Appeal Process" handbook/manual The grievance was to obtain the evaluation reports.

This audio recording was sent to the UFT and the DOE

Plaintiff alleges, the UFT knowingly helped the DOE to commit a white-collar crime against Lucio. |

| | |
|---|---|
| retaliation—the facts are the facts because Lucio has recordings to provide the Court. | |
| On July 18, 2014, Lucio emailed the superintendent with the hope of hearing from her, who is Rose-Marie Mills, Superintendent of Office of Adult and Continuing Education.<br><br>In response to an email, Ms. Rose-Marie Mills wrote, "**Mr. Celli, you have filed a grievance. Please follow the grievance process and discuss your next steps with your union. Thank you.**"[1]<br>Lucio informed Rose-Marie Mills about how Cole violated | On March 25, 2015, Lucio confronted the UFT with the following email:<br><br>Dear Ms. Sepulveda and Recipients,<br><br>I don't remember if I sent you an email about the appeals process, but does the union or the NYCDOE have a timetable of process which describes each step of the U-rating appeal. If so, please send me the document."<br><br>Please Take Notice, the UFT |

| | |
|---|---|
| Lucio's contractual rights with Cole's illegal rubric and how Bernard violated Lucio's contracutal rights to his personnel file because Bernard/Cole withheld evaluation reports from him | did not answer Lucio's request for information for procedural due process in perterminal hearings |

On September 29, 2014 Lucio emailed Ms. Mills about the fact that the UFT had lost all of Lucio's emails, on which the UFT was cc'ed, and this is the reason the UFT could not move forward with Lucio's harassment and intimidation complaint against Cole/Bernard. In the email, Lucio described the actions taken by Mr. Richard Cole and Ms. Bernard. However, Ms. Mills did not want to take Lucio's racial discrimination

complaint because she wrote, **"Mr. Celli, Kindly refrain from contacting my office as I cannot assist you."** <u>This is a direct violation of Title VII.</u> Upon receiving this email from Mills, Lucio made a FOIL request into the supervisor of Bernard. After Lucio received the FOIL request information, Lucio informed Ms. Mills that she was, in fact, Ms. Bernard's supervisor, on October 20, 2014 and she needed to address the issues Lucio raised. In response, Ms. Mills wrote, **"Please provide me with any and all information you have regarding an allegation or allegations regarding any DOE staff member so that I can report**

| | |
|---|---|
| **the same to the appropriate investigative agency."** Since, the UFT had not filed the complaint; Lucio had nothing to send Ms. Mills, which Lucio had previously explained to her—in Lucio mind the UFT and Ms. Mills et al. are at fault for the violations under Title VII. Additionally, this left Lucio without any recourse due to the actions of the UFT and Ms. Mills. | |
| On April 1, 2015, Lucio email Mr. Charles Peeples, Director of Human Resources, about Lucio's appeal and the fact that pretermination hearings procedures were not being followed and Lucio asked for his notice of evidence and the | On March 28, 2015, Lucio emailed Catherine Battle, Esq and others with the pdf of the Appeals Process.<br><br>Again, Lucio did not receive information |

rights to have Cole at the appeal because Cole was Lucio's evidence for the May 4, 2015—Lucio was denied notice and an opportunity to present evidence in his favor. Mr. Peeples wrote the following email:

**Good Afternoon**

**This is a matter that you need to address with your collective bargaining unit (UFT). I am not responsible for the governing of any appeals process.**

Plaintiff alleges, Peeples, Mills and Mandel participated in the falsification of

On April 23, 2015, Catherine Battle, Esq. said, "The UFT will not put our full resources in the appeal of your U-rating if you continue PERB because you can solve your problem in Federal Court."

Battle made this statement in front of Blassamn and made a similar statement over the phone with a threat.[2]

---

[2] Lucio cannot, at the moment, say the content of Battle's statement because Betsy Combier is too eager to intimidate Lucio and this Court is too eager to allow her criminal behavior to help Jackson-Chase to harm me

| | |
|---|---|
| documents presented to Lucio on May 4, 2015.<br><br>Plaintiff alleges, Peeples did not want to provide Lucio with his Loudermills rights, which is written in the PDF file entitled "Appeals Process".<br><br>Upon information and belief, the "Appeals Process" is put out by Peeples' office. | |
| On April 8, 2015, Todd Drantch explained to Blassman of PERB what the handbook/manual entitled "Appeal Process" required and he explained the process in a similar manner as it appears in the handbook/manual | From April 26, 2015 to May 3, 2015, Lucio sent emails to Jackson-Chase and Adam Ross request that centered on the Appeals process. These request were never honored or answered |

| | |
|---|---|
| On April 29, 2015, Todd Drantch informed Lucio that the Department could not offer Lucio a settlement but omitted and deprived Lucio of the evaluation reports—which Blassman ordered him to give to Lucio—because Drantch and the DOE decided to commit a white-collar crime by altering, falsifying, and concealing documents for May 4, 2015 | On May 2, 2015, Lucio called Saul Zalkin about Mary Atkinson's email to stop the appeal until the grievances are heard about the illegal rubric.<br><br>Saul stated, "I told you that the UFT will not process the grievance until the outcome the appeal and Mary does not have that power to stop the appeal because Ellen and I agreed to wait. |
| | On April 16, 2015, Lucio met with Susan Seldmeyer, who was Lucio's representative at the U-rating appeal.<br><br>Lucio quizzed Ms. Sedlmeyer on the contents of the Appeal Process and she lied about every aspect of the process--- which Lucio has audio |

recorded.

Sedlmeyer informed Lucio that the UFT and the DOE agreed (with a nod) not to allow UFT members from submitting audio recordings as evidence, which is in violation of Cleveland Board of Education v. Loudermill. In addition, Sedlmeyer said that she would kick Lucio if he played the audio recording and that it would hurt because she went to parochial school.

Sedlmeyer said to Lucio, "the UFT gave up on asking the DOE for the evidence years ago because the DOE does not comply with the request and Appellants always get the evidence on the day of the

| | |
|---|---|
| | appeal." This is a clear violation of Cleveland Board of Education v. Loudermill |

<table>
<tr><td colspan="2" align="center">At the Loudermill hearing on May 4, 2015</td></tr>
</table>

| | |
|---|---|
| Patirica Lavin, hearing officer, limited Lucio's right to offer and explain the evidence into recording, as the audio recording will show and as required by Loudermill. Lavin said, "We may look at them later in the committee."<br><br>Lavin impeded Lucio's right for an explanation of DOE's evidence, as required by Loudermill because Lavin said, "appellant cannot ask any questions of the principal." | Sedlmeyer had a miracle or transplant because she cited the Appeals Process word for word but lied to Lucio on April 15, 2015.<br><br>When the hearing officer sent the documents Lucio brought to the hearing, Lucio asked Sedlmeyer to ask for the missing documents with his signature. Sedlmeyer said, "Once the appeal hearing started, documents cannot be sent."<br><br>Lucio wanted the evaluation reports that were cited but |

| | never produced, like logs of when Cole and Lucio met—it never happened but Bernard said it did and there was a log. |
|---|---|
| Bernard was asked, "why aren't the reports signed?" Bernard answered, "we can't speak about that now." | |
| Bernard was asked, "where are the missing pages? Bernard answered, "we can't speak about that now." | |
| Beranrd was asked, "why isn't there any evidence of coaching" Bernard answered," Oh, I should have sent it in." | |
| Bernard switched from "we can't speak about it now to | |

| | |
|---|---|
| Oh, I should have sent it down." <br><br> Lucio was deprived an explanation of the evidence. | |

After the

| | |
|---|---|
| On May 20, 2015, Jackson-Chase emailed Lucio to inform him that DOE sent him an edited copy of the recording of May 4, 2015 but she blamed the vendor. <br><br> The edited portion is where Lavin pointed to the vendor and limited and impeded Lucio's Loudermill rights!!!!!!!!!!! | Lucio informed the UFT and DOE of Sedlmeyer's conduct <br><br> Randi Weingarten emailed the following messaged on June 12, 2015: <br> Mr. Celli- I am in receipt and have read virtually all your emails. It is obvious you are frustrated with both the process and the results. It seems, as a result you have made serious allegations and have engaged in conduct such as taping conversations, I assume without asking or telling others. I ask you to |

provide our lawyers with the proof of those allegations. I know Adam Ross has been in touch, and I ask you to talk to him directly.

Adam Ross emailed the following message on June 16,2015:

I received a message that you called on Friday regarding Randi Weingarten's email to you Friday morning. In order to address your concerns, as I have said, I first need the evidence that a threat of violence was made against you by a UFT representative, including the complete recording that you have previously indicated you have, as well as any other evidence you would like me to

consider. Once I have that information and it has been reviewed, we can further discuss the matter.

Leroy Barr emailed Lucio on July 29, 2015 and said, "Regarding some of your allegations including an alleged "secret agreement" and threats of physical harm against you, it appears that Mr. Ross had asked you to provide him with the complete recordings you claim to possess. I will be happy to review the complete recordings and look into these matters should you to send them to me."

Lucio did not comply with the UFT's request because the

| | |
|---|---|
| | UFT did not the Taylor Law to process grievance and to investigate Cole's illegal rubric. |
| | Lucio has the recording and sent a portion of the recording of where Sedlmeyer informed Lucio of the violation of the Loudermill, which is illegal under the Taylor Law, and the fact that she would kick Lucio, if he played the audio recording |
| | Lucio is more than eager to play his recordings for the Court and has offered Mr. Carter of the Law Dept to go down to his office and play them all. |

Then on October 26, 2016,
Leroy Barr emailed Lucio to
say,

With respect to your grievance
conference held a couple of
weeks ago, it is my
understanding that the
Chancellor's representative
made an offer to settle and
indicated that the DOE is
willing to grant you a new
appeal hearing with respect to
the per session U-rating you
received if you agree to
withdraw your PERB
complaint and outstanding
grievances related to the U-
rating appeal. It is also my
understanding that you have
chosen to decline the DOE's
offer. While it is our

understanding that it is the
DOE's position that
recordings are not allowed,
should you make the decision
to accept the DOE's offer, the
UFT would seek to introduce
any tape recording that you
believe will support you in
your appeal. If the DOE
declined to admit the
recording and the appeal was
upheld by DOE, we would
request that the Office of
General Counsel of NYSUT
provide a legal opinion as to
whether a legal challenge to
the rating would be viable at
that time.


Please Take Notice, Barr did
not mention that arbitration
decisions about evaluations

would be followed because the decision would show that Cole was bias against Lucio

Please take further notice, the lying of work rules, which are a mandatory subject of negotiation. In addition, Your Honor see the progression of fraud that Lucio experience from Randi's email to the last email from Barr.

28 U.S.C. ¤455(b)(2) does not require that Judge Cogan, himself, serve as counsel to a named party, it merely requires a showing that his associates did. That fact is undisputed on this record.

Moreover, the email from Randi Weingarten to Lucio centered on "Loudermill rights" and leaving no doubt that Judge Cogan must disqualify himself.

3.  Where two separate factors involving a past association with a party and personal animus toward counsel combine to establish the personal bias and prejudice of the judge, as set forth in a timely and sufficient affidavit, the allegations must be accepted as true and the Court is required to recuse itself pursuant to 28 U.S.C. ¤ 144."

The recusal motion has been filed "at the earliest possible moment after obtaining the facts demonstrating a basis for recusal." See U.S. v. Occhipinti, 851 F. Supp. 523, 567 (So. Dist., NY 1993).

It sets forth the origins of the Court's bias: an extrajudicial episode and prior association. U.S. v. Zagaire, 419 F. Supp. 494 (No. Dist. Cal. 1976), and documents with particularity the manifestation of bias as reflected in the current proceeding.

As such, and for purposes of Section 144 of Title 28, the allegations of a certified affidavit must be accepted by the Court as true, and the Court must act in accordance with the mandate of 144 and recuse itself. U.S. v. Sykes, 7 F. 3d 1331 (7th Cir. 1993).

**AFFIDAVIT**

 I, Lucio Celli, am a resident Bronx County, State of New York, and I do hereby certify, swear or affirm under the penalty of perjury that I am competent to give the following declaration based on my personal knowledge, and that the following statement is true and correct to the best of my knowledge:

Further the affiant saith naught.

Lucio Celli _____    _____    12/5/16

(Print Name)                (Sign Name)                (Date)

Dated: New York, New York
~~November~~ *5th*, 2016
*Dec*

Lucio Celli

By: _____

Lucio Celli
Pro Se
2743 Seymour Avenue
Bronx, New York 10469
(718) 547-9675

I declare under penalty of perjury that the foregoing is true and correct.
Dated:   [date] *12/5/2016*

_____
[your signature]

(or for an affidavit)

Sworn to before me this *5th* day of *Dec* 20 *16*

_____
Notary Public

SHARON LOCKE STONLY
Notary Public - State of New York
NO. 01L04995518
Qualified in Westchester County
My Commission Expires Apr 27, 2018

Case Number: ___15-CV - 3679___

MOTION TO RECUSE

Now comes the above named, Lucio Celli and moves to recuse Judge Brain Cogan from the above entitled matter under 28 USCS Sec. 455, and Marshall v Jerrico Inc., 446 US 238, 242, 100 S.Ct. 1610, 64 L. Ed. 2d 182 (1980).

"The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law." In this regard and the bases for this motion, Hon. Brain Cogan's letter dated October 23, 2016 is the reason to seek disqualification/recusal because his neutrality came into question due to the contents of his letter.

The above is applicable to this court by application of Article VI of the United States Constitution and Stone v Powell, 428 US 465, 483 n. 35, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

The above mentioned Judge has deliberately violated litigant's personal liberties and/or has wantonly refused to provide due process and equal protection to all litigants before the court or has behaved in a manner inconsistent with that which is needed for full, fair, impartial hearings.


In Stone v. Rice, 428 U.S. 465, 492 (1976), the Supreme Court stated, "[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to the constitutional rights in the trial and appellate courts of the several States. **State courts, like Federal courts, have a constitutional obligation to safeguard personal liberties and to uphold Federal law".** It is the Plaintiff understanding that District Court judges have the obligation—as it is imposed by Article VI of the constitution—must uphold liberties that are guaranteed by Federal law or adjudicated by the Supreme Court. The underlying factor to question your neutrality is the fact that you ignored, in your letter admonishing me and dated October 23, 2016, that you ignored my rights found in Loudermill v. Cleveland Board of Education was denied to me prior, during, after the appeal date (also known as Loudermill hearing).

**In fact**, the admonishments in the letter clearly comes across as threat to dismiss my complaint, if I added with any practicality of what happened to deny my Loudermill rights by Defendants and this would include the United Federation of Teachers or Administrative Law Judge Angela Blassman of New York State Public Relations Board. Without a doubt, I informed you that I have audio recordings that my former lawyers stated to me that DOE Legal are immune for the deprivations of my Loudermill rights at a pretermination hearing. With particularity, I informed you that Morelli threatened with Blassman because she had vindictive ways to harm me, which you corruptly ignored—**How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

Moreover, in the complaint you dismissed, I detailed what Susan Sedlmeyer informed me that the United Federation of Teachers agreed to prohibit their members from introducing audio recordings, among other aspects of evidence, at Loudermill hearings as evidence, which I audio recorded Susan Sedlmeyer telling me on April 15, 2015. This practice started in 2004 and Randi Weingarten was the President of United Federation of Teachers, who was your coworker at Stroock, Stroock, Lavan, LLC. In addition, you were a partner at Stroock, Stroock, Lavan, LLC. during the same timeframe and your former law firm had (even in 2004) and continues to profit from what occurs at Loudermill hearings-- **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

Furthermore, Susan Sedlmeyer told me that if I played my audio recording of Cole violating my contractual rights, which I recorded her saying on April 15, 2015, that she would "kick [me] and it would hurt because [she] went to parochial school." Sedlmeyer went on to say, "the UFT and DOE agreed to this rule by nodding on it, along time ago." There is a reason for gentlemen's agreement and for the rule not written anywhere because "the nod"/gentlemen's agreement violates Cleveland Board of Education v. Loudermill. Randi Weingarten (Exhibits ⟍⟋ ), Adam Ross (General Counsel for the UFT) (Exhibits ⟍ ⟍ and Leroy Barr (Exhibits ⟍ ) harassed me for the recording of Susan Sedlmeyer because it is a clear violation—which the UFT did not have the right to negotiate away—of Cleveland Board of Education v. Loudermill—according to each email, the UFT and DOE does not have an agreement to impede members from introducing audio recordings. After the grievance hearing for the edited recording on October 8, 2015, I receive an email from Leroy Barr where he wrote, "While it is our understanding that it is the DOE's position that recordings are not allowed, should you make the decision to accept the DOE's offer, the UFT would seek to introduce any tape recording that you believe will support you in your appeal." As you can see, Your Honor, Mr. Barr lied to me in an email dated October 26, 2015 because all work rules must be negotiated between employer and union and ANY change without union consulting the union is a clear violation of New York State Fair Employment Act — but Randi Weingarten was a former coworker of yours and business associate for a very long time — **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

Even Further, in the complaint that you dismiss, I alleged that the Defendants did not allow me to speak (by limiting by speech) or question the principal because she submitted fraudulent documents and documents that were missing. On the docket, there is an email from Jackson-Chase (former General Counsel for the Defendants) (Exhibit____), where she informed me that the Defendants sent me an edited recording and placed the fault upon the vendor. The edited portion is where the hearing officer deliberately impeded my speech from asking, "where are documents I signed?" and the fact that Bernard clearly lied about my time and attendance because Bernard clearly cited my timesheets prior to

lying about my attendance at professional development. Everything in this paragraph is part of the denial of my Loudermill rights because it occurred at Loudermill hearing— **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

Moreover, the grievance hearing on October 8, 2015, Alan Lichtenstein and Marcel Kshensky attempted to dupe me into believing that administration did not have any knowledge of Jackson-Chase's email to me, like in your letter dated October 23, 2016. Jackson-Chase is the administrator of the Office of Labor Relations, which I have all recorded and you threatened to dismiss if I added the facts with any particularity. The email from Jackson-Chase and edited recording deal with Cleveland Board of Education v. Loudermill— **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

The most disturbing aspect of your letter, where you admonish me, is the fact that you twist what I wrote about Administrative Law Judge Angela Blassman of New York State Public Relations Board. I wrote in the complaint that Blassman did not allow me to put in a motion for particularization because she told me the motion did not exist for the Charging Party. You corruptly switched it to Blassman ruled against me and characterized me as not being able to accept a ruling. You are well aware that a decision rendered by Blassman is a protected activity for her, but Blassman lying about the existence of a motion is misconduct on her part and she is not protected. Blassman lying is to help the Defendants and the United Federation of Teachers cover up their illegal scheme at Loudermill hearings— **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

Without a doubt and based on audio recordings, Your Honor, the Defendants and the United Federation of Teacher, with help of ALJ Blassman, denied me my rights found in Cleveland Board of Education v. Loudermill—How does your admonishment look to uphold Federal law? How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? Or How does your admonishment impede fraud?—Because it appears that your admonishment looks to derail a Supreme Court decision and tries to dupe me into believing that United Federation of Teachers and Blassman has nothing to do with my case, as did my former lawyer and the way Randi Weingarten agreed to deprive her members of her Loudermill rights since 2004? Then, there are emails from my Beloved Randi Weingarten that tries to dupe me as well. It strongly appears that you are upholding the interest of your former coworker and business associate, Randi Weingarten— **How is your admonishment neutral? or How does your admonishment uphold Federal law or decisions rendered by the Supreme Court? or How does your admonishment impede fraud? Why does your admonishment seek to limit testimony and evidence?**

The standard of review to use is abuse of discretion. Carey v. State, 405 A.2d 293 (Md. Ct. Spec. App. 1979), cert. denied, 445 U.S. 967 (1980). The Petitioner believes that you abused your discretion when you attempted to limited the complaint under Rule 8 when the Plaintiff used Rule 9 because Lucio experienced fraud at Loudermill hearing, which your former coworker has interests in this case. Your former coworker, Randi Weingarten agreed to provisions that would harm her members at Loudermill hearings and she has a vested interest in keeping the evidence a secret. It appears that the limitation you would like to place upon the Plaintiff will allow you to render a decision of "Plaintiff did not plea sufficient amount of facts."

A judge is required to recuse himself 'only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. United States v. Story, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting Trotter v. International Longshoremen's & Warehousemen's Union, 704 F.2d 1141, 1144 (9th Cir. 1983)). Your admonishment and threat to dismiss the complaint if the Plaintiff set forth pleadings with practicality of fraud because it would help Randi Weingarten, without doubt based your comments contained in the letter. There is case law to support my claims and Your Honor has threatened to dismiss Plaintiff's complaint, if he pled those claims against the United Federation of Teachers, grievance hearing (which I have an email from Randi Weingarten), and ALJ Blassman. Your comments and admonishment make it appear you have special knowledge of the Plaintiff's case because Your Honor stated, "_____ has nothing to do with your case" and Lucio is able to show how each event are connected and related—Did you wear Randi's glasses in reading my complaint? More importantly, Betsy Combier informed me that Randi Weingarten made phone calls to obtain favors from PERB and other people, when Betsy Combier worked at the UFT—I am that type of favor because your comments and admonishments appear to be in Randi Weingarten's favor.


Prejudice or bias must be personal, or extrajudicial, in order to justify recusal. Id. at 279. "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Demjanjuk v. Petrovsky, 776 F.2d 571, 577 (6th Cir. 1985), cert. denied, 475 U.S. 1016 (1986). Plaintiff believes that Your Honor's prejudice stems from Randi Weingarten—how could you know what is part of Plaintiff's case and what is not part of Plaintiff's case? Your comments and admonishment is without a doubt come from an extrajudicial source and the Plaintiff believes it is Randi Weingarten.

Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "[stems] from an extrajudicial source and [results] in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563 (1966). Again, Plaintiff believes that Judge Brain Cogan's background and association with Randi Weingarten led to the letter dated October 23, 2016. Randi Weingarten attempted to dupe Lucio into believing that he was the problem for the fake documents that he encountered, which you attempted to dupe Lucio into believe that his employer was being unfair—**How are fake documents "merely unfair"? How are white collar crimes "unfair"?** In New York State, citation and the use of fake documents is a crime!! More importantly, it illegal to impede a Plaintiff from pleading the facts, like my

former lawyer and the way it appears you want the Plaintiff to edit out the facts to help Randi Weingarten!! **How is the Plaintiff a problem when his employer cited documents that did not exist and the United Federation of Teachers told him that the documents were falsified?** There are case laws to support this retaliatory/harassment conduct by Lucio's employer under Title VII (sec. 704)/USC 1981 and Plaintiff have not experienced where HIV has affected his brain yet as a means to believe you or anyone else—**I need to support my claims with case laws and that is what I have done and you want me to edit out the facts in a corrupt manner because this would help Randi Weingarten!**

Canon 3 n3 of the U.C.J.C. is based on the American Bar Association Model Code of Judicial Conduct promulgated in 1972. The Model Code has been adopted in whole or in part by forty-seven states, and adopted by the Federal Court system. Section C of canon 3 begins with the broad proposition that judges must disqualify themselves when their "impartiality might reasonably be questioned." Regional Sales Agency, Inc. v. Reichert, 830 P.2d 252, 255. (Utah 1992). **Subpart (iii) of canon 3(C)(1)(d), for instance, requires disqualification when the judge knows that someone within the third degree of relationship to the judge or the judge's spouse "[has] an interest that could be substantially affected by the outcome of the proceeding." U.C.J.C. canon 3(C)(1)(d)(iii).** Even in terms of Judges' Code of Conduct, Your Honor knows someone within the third degree of relationship that has an interest in hiding an agreement that has harmed her members 2004 and your letter appears to substantially affect the outcome of Plaintiff's pending case.

The United States Constitution guarantees an unbiased Judge who will always provide litigants with full protection of ALL RIGHTS. Therefore, Petitioner respectfully demands said judge recuse themselves in light of the evidence attached with this motion detailing unethical and/or illegal conduct or conduct which gives Petitioner good reason to believe the above Judge cannot hear the above case in a fair and impartial manner.

I respectfully request that Your Honor recuse himself in the above-referenced matter because the Petitioner, in a reasonable manner, has questioned Your Honor's impartiality. Please take notice, Plaintiff has other alleg

A

**From:** Randi Weingarten, Office of the President <rweingar@aft.org>
**To:** Lucio <enzo0mad@aol.com>
**Cc:** Adam Ross <ARoss@uft.org>; Michael Mulgrew, AFT VP <mmulgrew@uft.org>; Karen Magee, AFT VP <kmagee@nysutmail.org>; Catherine Battle <cbattle@nysutmail.org>; Howard Schoor <hschoor@uft.org>; Alice Cooper-Jackson <ajackson@uft.org>; David Strom, Legal <dstrom@aft.org>
**Subject:** Re: Audio recording
**Date:** Fri, Jun 12, 2015 6:19 am

---

Mr. Celli- I am in receipt and have read virtually all your emails. It is obvious you are frustrated with both the process and the results. It seems, as a result you have made serious allegations and have engaged in conduct such as taping conversations, I assume without asking or telling others. I ask you to provide our lawyers with the proof of those allegations. I know Adam Ross has been in touch, and I ask you to talk to him directly.

Randi

Sent from my iPad

> On Jun 12, 2015, at 3:57 AM, Lucio <enzo0mad@aol.com> wrote:
>
> Dear Mr. Ross and Ms. Battle,
>
> Here is a recording of the way my colleague interpreted the treatment that I received at the Bronx UFT. This is to help Ms. Battle prepare and have an idea of what I have collected. This interaction occurred in June of 2014.
>
>
> Please keep in mind that the UFT created an environment where I needed to record. This behavior was done so that I could feel safe. I would have never started to record administrators, If Mr. Polikin would have done his job. I started to record administration in 2009. After 2012, I had the need to record UFT Reps. because of Ms. Cooper-Jackson and Mr. Polikin. Sometime thereafter, I started to record my colleagues.
>
>
> Is this unionism? Wait, this is the secret agreement between the UFT and the DOE-- according to Ms. Seldmeyer. I know this isn't the recording that you want, but I wanted representation without any reservations being made about me.
>
>
> I figured that I would create an award for this year's Rep because she sold out a member.
> <image1.JPG>
>
>
> Press record and no more mooing,
> Lucio Celli
>
>
> <Recording.wav>
>

> 
> 
> Sent from my iPhone

_____

This e-mail and any attachments are confidential and are intended solely for the named addressee(s). If you are not a named addressee, you should not copy, alter, post, forward, distribute or disseminate the contents of the e-mail or attachments. When responding, please refrain from including information such as social security numbers, passwords, and other sensitive types of data in non-encrypted emails and non-password protected email attachments. Any views or opinions expressed are solely those of the individual and do not necessarily represent those of the American Federation of Teachers (AFT).