1  **Lucio Celli**
   **2743 Seymour Avenue**
2  **Bronx, New York 10469**
   **646-734-3899**
3
         CLE[...]
4     U.S. DISTR[...] COURT
         E.[...]
      AFTER HO[...] BOX

☐ **ORIGINAL**

7                          Eastern District of New York

8

9  Lucio Celli,                          )   Case No.: **15-cv-3679 (BMC) (LB)**
                                          )
10              Plaintiff,                )   MEMORANDUM IN SUPPORT OF
                                          )
11        vs.                             )   DEFENDANT'S RULE 59(e) MOTION TO
                                          )
12                                        )   ALTER OR AMEND THE JUDGMENT
   **NEW YORK CITY DEPARTMENT OF**         )
13            **EDUCATION[1]**,            )
                                          )
14  **ANNE BERNARD** (IN HER OFFICIAL AND  )
   INDIVIDUAL CAPACITY), **RICHARD COLE**  )
15  (IN HIS OFFICIAL AND INDIVIDUAL CAPACITY), )
   **COURTENAYE JACKSON-CHASE, ESQ** )
16  (IN HER OFFICIAL AND INDIVIDUAL CAPACITY), )
   **SUSAN MADEL** (IN HER OFFICIAL AND )
17  INDIVIDUAL CAPACITY), AND **GRISMALDY** )
   **LABOY-WILSON** (IN HER OFFICIAL AND )
18  INDIVIDUAL CAPACITY),                 )–
   ,                                      )
19                                        )
              Defendant.                  )
20                                        )
                                          )
21                                        )

22 ───────────────────────────────

23

24 **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR**

25 **AMEND THE JUDGMENT**

26

27

28 ───────────────────────────

[1] New York City Board of Education

- 1 -

Plaintiff Lucio Celli ("Lucio") respectfully requests that this Court reconsider its decision of December 24, 2016, holding that complaint is dismissed *sua sponte* . Docket No 52.  The Court's finding that Lucio did not comply with Rule 8. However, FRCP 8(a) only requires a plaintiff to provide a notice at the pleading stage. In addition, Court's findings of allegations were fabricated or delusional is not supported by the record **because** the Plaintiff clearly cited documents to be used during the case, which included audio recordings, to be used to support his allegations.

To correct this mistake, Lucio is supplying the Court with proof that on May 4, 2015, the Defendants committed a crime against him because DOE Legal did not answer the improper practice charge in their response to PERB, as way to cover up what occurred on May 4, 2015.

**Standard for Relief under Rule 59(e)**

A motion to reconsider under Rule 59(e) should be granted to correct a clear error, whether of law or of fact, and to prevent a manifest injustice. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (the four grounds for reconsideration are: to prevent manifest injustice, to accommodate for an intervening change in controlling law, to account for newly discovered evidence, or to correct clear error of fact or law; EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997). So long as the Rule 59(e) motion is timely filed, the courts have considerable discretion. Lockheed Martin Corp., 116 F.3d at 112. Although the courts are not required to consider new legal arguments[2], or mere restatements of old facts or arguments,[3] the court can and should correct clear errors in order to "preserve the integrity of the final judgment." Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 50 (D.D.C. 2002).

In Lockheed, the district court reconsidered a decision to deny enforcement of an EEOC subpoena in light of new affidavits submitted by the agency:

> The affidavits made it clear that the order denying enforcement was based on an erroneous understanding of the relevance of the information sought by the EEOC. In

---

[2] Dist. Of Columbia v. Doe, 611 F.3d 888, 896 (D.C. Cir. 2010).
[3] State of New York v. United States, 880 F.Supp. 37, 38 (D.D.C.1995).

1
2
the context of a public agency attempting to fulfill its statutorily mandated purpose, manifest injustice would have been the result of allowing a ruling based on an erroneous and inadequate record to stand.

3
4
5
6
7
8
9
10
11
12
116 F.3d at 112. Under the correct view of the facts, the EEOC was clearly entitled to prevail. Id. The Fourth Circuit affirmed, explaining that "the district court would likely have abused its discretion if it had failed to grant the Rule 59(e) motion." Id. (emphasis in original); see Norman v. Arkansas, 79 F.3d 748, 750 (8th Cir. 1996) (finding abuse of discretion where court refused to reconsider clear factual error); see also Anyanwutaku v. Moore, 151 F.3d 1053, 1058-59 (D.C. Cir. 1998) (finding abuse of discretion where court refused to reconsider clear legal error). Reconsideration is particularly appropriate in this case because the Court's decision is based upon credibility of Lucio allegations without hearing audio recordings or viewing physical documents and demanding a plaintiff to write the events in the district court's view.

13
**Credibility**

14
15
16
17
If the Court held an evidentiary hearing and found Lucio's evidence to be delusional or a clear fabrication of events, then this motion would be meritless because the judge saw the evidence and able to determine the credibility of Lucio's evidence. **Nevertheless**, the Court erred when it ignored all documents cited and did not mention the documents in the dismissal.

18
19
20
21
22
23
On a FRCP 12(b)(6) motion, "**courts may only consider** the complaint itself, **documents that are…referenced in the complaint**, **documents that the plaintiff relied on in bringing suit** and that are either in **the plaintiff's possession** or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken." Moses v. Apple Hospitality Reit Inc., No. 14-CV-3131 (DLI)(SMG), 2015 WL 1014327, at *3 (E.D.N.Y. Mar. 9, 2015)(citing Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)).

24
25
26
27
Lucio clearly wrote what documents he had in his possession and what documents or statements[4] constituted a white-collar crime. Your Honor's Order at Doc. No 52 has Lucio appearing as delusional or has fabricated allegations and the conclusions were not supported by

28

[4] Audio recorded

evidence already on the docket and referenced within the complaint—which is required by FRCP 12(b)(6).  Plaintiff respectfully points out the differences between Lucio's complaint and the complaints Your Honor has cited:

> [5]Judge Blanco wrote, **in** Middleton v. United States[6] **that** "Additionally, plaintiff alleges that Social Services had plaintiff "falsely arrested for no reason stating I stole money from the agency and this never occurred." (Compl. at 4-5.) The arrest apparently occurred in May 2001. (Compl. at 4.)" Judge Blanco clearly cited how the plaintiff was delusional in her thinking because the plaintiff never cited how she would prove the fact that she was falsely arrested because all she had in the complaint were allegations based on opinions and beliefs.[7]
>
> In Ellena Middleton's complaint, **she did not reference** any document to support her allegations, any witness(es) that could or would corroborate her allegations, and/or have any audio recordings to support her allegations of the events. Judge Blanco was just to pass judgment upon Middleton because she was arrested for stealing money and any criminal would say, "they caused it." The Court has to deal with evidence and only evidence…this is the rule of thumb.

As Your Knows, "a district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or . its decision-though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions."   Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir.2001) (footnote omitted). In terms of evaluating evidence for factual findings is, "In determining the adequacy of the complaint, any written instrument attached to the complaint as an exhibit **or incorporated in the complaint by reference, as well as integral documents upon which the complaint relies will be considered.** *Subaru Distrib. Corp. v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir.2005).

**District Court dismissal due to not complying with Rule 8**

Lucio pleaded with particularity because he experienced fraud by DOE Legal and has the evidence to provide the Court

---

[55] This is from the case that Your Honor cited to portray Lucio as a liar and crazy
[6] This is a case that Your Honor cited
[7] Lucio read the complaint and downloaded it

In *Conley v. Gibson*, 355 U.S. 41 (1957), the Supreme Court stated the interplay between Rule 8 (pleading) and Rule 12(b)(6) as follows: "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. Lucio contends, he can prove white-collar crimes were committed against him at grievance hearings, at his Loudermill hearing, and at NYS PERB **because he has the audio recordings and documents to prove the allegations—and he clearly cited the documents and speech from the audio recordings.** Defendants altered, falsified, and concealed certain documents on May 4, 2015[8]. The most egregious conduct was the inducement of fraud at NYS PERB because DOE Legal[9] stated a decision document from ALJ Blassman existed because DOE Legal wanted to evade the improper practice charge of fraud at Lucio's Loudermill hearing, as it appears.

The non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Evidence offered to demonstrate a genuine dispute regarding a material fact must consist of more than "conclusory allegations, speculation or conjecture." *Cifarelli v. Vill. Of Babylon*, 93 F.3d 47, 51(2d Cir. 1996).

The Fifth Circuit, in turn, affirmed the judgment of dismissal, 954 F. 2d 1054 (1992), and we granted certiorari, 505 U. S. —— (1992), to resolve a conflict among the Courts of Appeals concerning the applicability of a heightened pleading standard to §1983 actions alleging municipal liability. Compare, *e.g.*, *Karim-Panahi* v. *Los Angeles Police Dept.*, 839 F. 2d 621, 624 (CA9 1988) ("a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice") (internal quotation marks omitted). We now reverse.

In *Wynder v. McMahon*, 360 F.3d 73 (2nd Cir. 2004), the Circuit held, "the district court's order was invalid [because] facts are all that are required, and they need not be pled in detail. District courts are not authorized to demand more of litigants, since to do would permit what Rule 8 forbids,

---

[8] Loudermill hearing and the hearing dealt with Cole's rubric
[9] Mr. Todd Drantch in an answer to an improper practice charge and in front of the ALJ Blassman.

1   "dismissals based on stringent pleading standards," and would defeat its purpose of setting a low
2   entry standard and a common rule on all litigants." Judge Cogan stated, "Plaintiff was either
3   discriminated against because he is white and/or disabled, or not. That is all there is to this case, and
4   if plaintiff does not stick to the facts showing those claims and those facts only, the case is going to
5   be dismissed." What Judge Cogan wanted from Lucio was to edit out any pleas of retaliation,
6   hostile work environment, and criminal conduct by the Defendants. Lucio did not want to edit
7   anything out **because of the fact** that he had audio recordings to provide the court, which would not
    make the allegations delusional or fabricated.

8

9    Argument

10  **Cole's contractual violation and illegally performed and used rubric because Cole's teachers'**

11  **evaluation system was not negotiated by the UFT and the DOE.**

12       Please see under Loudermill

13

14  **Mandel falsified a grievance as retaliation for complaining for racial discrimination.**

| A[10] | B[11] |
|---|---|
| In Ramkissoon v. Blackstone Grp., the judge cited "**attempted destabilization methods and cover-ups, claiming 'RICO' Doe is depressed and emotionally distraught**" from the complaint. (**Exhibit A**) | Lucio wrote Mandel falsified a grievance decision as way to deprive him the payment, since Lucio was hired for the job.  Mandel's conduct is predicated on the email sent to her on July 17, 2014 because it explained how Lucio felt discriminated by Cole's and Bernard's conduct towards me. (See Doc. 29 at **Exhibit A and A.1**).  And, Lucio informed Jackson-Chase of |

---

[10] Lucio chose one allegation from each complaint and the plaintiffs in those complaints did not cite any evidence to be used during trial.
[11] Everything under column B is what Lucio pleaded in the complaint and  there are audio recordings to support Lucio's allegations.

| | |
|---|---|
| | Mandel's action and explained how the action was retaliatory for the email sent on July 17, 2014 |
| Ramkissoon did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s). As a result, Ramkissoon's allegations could not be plausible under the Iqual standard of pleading. | Lucio had a letter that offered him a position as a Special Education Evaluator for the summer of 2014. (See Doc. No 29 at **Exhibit G** ) |
| | Lucio had a letter that informed him to stop reporting to his assignment. Mary Atkinson informed Lucio that DOE violated their policy |
| In Middleton v. United States, **"plaintiff alleges that Social Services had plaintiff "falsely arrested for no reason stating I stole money from the agency…" (Exhibit B)** | A least senior teacher preformed the job, as a Special Education Evaluator and Deena Soni did not apply for the job |
| Middleton did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) to show defendants were lying to the court. Due to the deference owed to law enforcement and lack of evidence to support her allegations, Middleton's allegations could not meet the plausibility under the Iqual pleading standard. | Mary Atkinson informed Lucio that the UFT never loses grievances like this one and he pissed someone big off and he should stop the proceedings at PERB. In addition, DOE violated grievance rules. In addition, grievance rules and procedures are mandatory subjects of negotiation of the Taylor Law |
| | Catherine Battle, Esq. (NYSUT Lawyer) said, "Mr. Celli's claims are better suited for federal court because of City's conduct at grievance |

| | |
|---|---|
| | hearings" **(audio recorded) and** Lucio sent the audio recording to the DOE and the UFT |
| | On June 30, 2014, Albania Sepulveda, of the UFT, emailed Lucio the following statement:<br><br>"The Office of Labor Relations (OLR) has informed me that you received an offer from the DOE for the Summer Per-session Program, please confirm. If so, there is no need to proceed with this grievance and upon your confirmation it will be WITHDRAWN."<br><br>This email is related to the Special Education Evaluator's position given to Lucio, but he was told not to report the position at the school level. Also, the reference to "WITHDRAWN" is directed to the grievance with the Breakfast and Lunch program. |

**Garry Lavaman and Stanley Fogel cited a fake arbitration decision to retaliate**

| | |
|---|---|
| In Ramkissoon v. Blackstone Grp., the judge cited "**attempted destabilization methods and cover-ups, claiming 'RICO' Doe is depressed and emotionally distraught**" from the complaint | Lucio wrote Garry Lavaman and Stanley Fogel lied about the existence of arbitration decision as a way to deprive and retaliate against him since he placed an EEOC complaint |
| Ramkissoon did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) | Lucio informed Jackson-Chase of NYU's library, which is a labor library named Tamiment Library and Robert F. Wagner Labor Archives and the library did not have the decision cited by Fogel and Lavaman.<br><br>1. City funds the library and it is free for the public to enter.<br>2. City houses all arbitration decisions between the City and various unions |

| | |
|---|---|
| | 3.  The Librarians could find the decision quoted by Lavaman and Fogel |
| | Fogel cited what Ms. Susan Mandel had in the grievance folder. Example, the email sent to Mandel on July 17, 2014, which is the letter Lucio sent to Mandel complaining about racial discrimination. |
| In Middleton v. United States, **"plaintiff alleges that Social Services had plaintiff "falsely arrested for no reason stating I stole money from the agency…"** | Catherine Battle, Esq. (NYSUT Lawyer) said, "Mr. Celli's claims were better suited for federal court because of City's conduct at grievance hearings"  And, how DOE violated |
| Middleton did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) to show defendants were lying to the court.<br><br>Most importantly and besides not citing documents or evidence to support her allegations, Middleton admitted that the police placed her into a mental institution. | Catherine Battle, Esq. (NYSUT Lawyer) sent me the grievance decisions that dealt with per session, which are not what Fogel and Lavaman cited. **(Exhibit C )** |
| In Ramkissoon v. Blackstone Grp., the judge cited "**attempted destabilization methods and cover-ups, claiming 'RICO' Doe is depressed and emotionally distraught**" from the complaint | Mary Atkinson informed Lucio that the UFT never loses grievances like this one and Lucio pissed someone big off. Atkinson suggested that Lucio should stop the proceedings at PERB. In addition, DOE violated grievance rules. **(Exhibit D)** |
| Ramkissoon did not cite a document(s) to | It is DOE policy that applicant has to meet the |

| | |
|---|---|
| support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) | qualifications of the job posting and it is non-mandatory subject of negotiation under the Taylor Law. (**Exhibit E**)[12] |
| | Lucio provided Lavaman and Fogel with a name of a teacher that did not meet qualifications of the job positing, like how Lucio met  did and this teacher has less seniority than I. |

**Lucio's Loudermill hearing because Cole altered terms and conditions of contract between the DOE and the United Federation of Teachers, which made Cole's rubric and teachers' evaluation system illegal.** Lucio wrote that he was deprived all of his

| | |
|---|---|
| In Ramkissoon v. Blackstone Grp., the judge cited "**attempted destabilization methods and cover-ups, claiming 'RICO' Doe is depressed and emotionally distraught**" from the complaint | On July 22, 2014, Mr. Adam Ross, Esq., General Counsel of the UFT, informed Lucio that the illegal rubric and the behavior of withholding evaluation reports was in violation of collective bargaining agreement between the UFT and the DOE. The contractual violation by Bernard and Cole is Article 21(a) and Article 8(j). (**Exhibit F**) |
| Ramkissoon did not cite any document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) | On December 8, 2014, Saul Zalkin, UFT Rep. in the UFT Grievance Dept., informed Lucio of the "Appeals and Review" manual. (**audio recorded**). This manual explained appellant's procedural due process. |

---

[12] In the arbitration decision, the arbitrator states that the DOE presented their argument as being policy and qualifications on a job postings are not non-mandatory subjects of negotiations because it is an employer's prerogative, under the Talyor Law, because

| | |
|---|---|
| | In response towards Mr. Zalkin's statements about "Appeals Manual," Lucio sent the following email, on December 8, 2014, to the UFT: |
| | "According to Mr. Zalkin, I should have received official documents that are related to the U rating.  He told me to ask and I told him that I FOIL'ed those documents too --not honored. |
| | Where are those documents? Lastly, this was (sic) given to me. " (Exhibit ) |
| | No one from the UFT provided Lucio with any information of this procedural due process rights that are required "Cleveland Board of Education v. Loudermill." The email was sent to the following email addresses: Howard Schoor hschoor@uft.org; Michael Mulgrew mmulgrew@uft.org; Karen Magee kmagee@nysutmail.org; Randi rweingarten@aft.org; Albania Sepulveda asepulveda@uft.org; Jeffrey Povalitis Jpovalitis@uft.org. |
| In Middleton v. United States, "plaintiff alleges that Social Services had plaintiff **"falsely arrested for no reason stating I stole money from the agency…"** | As a response to Lucio's Loudermill rights inquiry, Mr. Charles Peeples  wrote, "This is a matter that you need to address with your collective bargaining unit (UFT). I am not responsible for the governing of any appeals process." The letter from Charles Peeples is |

|  |  |
|---|---|
|  | dated April 1, 2015. In the letter, Lucio evoked his right to call witness(es), and to see the evidence because he needed to prepare for the appeal hearing date on May 4, 2015—most importantly, these are the basic rights required by "Cleveland Board of Education v. Loudermill" and these said rights were not provided to me on May 4, 2015. On December 8, 2014, Saul Zalkin, UFT Rep. in the UFT Grievance Dept., informed Lucio of the "Appeals and Review" manual. (audio recorded). This manual explained the appellant's procedural due process rights. Lucio was deprived, in a fraudulent manner, all of his Loudermill rights. |
| Middleton did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) to show defendants were lying to the court | On April 16, 2015, Lucio met with Susan Sedlmeyer, UFT Advocate, where she explained to Lucio what would happen at his Loudermill hearing. According to Sedlmeyer, the UFT agreed with the DOE to impeded appellants from presenting evidence at their appeal—which is totally against "Cleveland Board of Education v. Loudermill." |
| In Ramkissoon v. Blackstone Grp., the judge cited "**attempted destabilization methods and cover-ups, claiming 'RICO' Doe is depressed and emotionally distraught**" from the complaint | On May 27, 2015, Adam Ross, Esq., General Counsel of the UFT, sent Lucio an email Adam Ross asked the audio recording between Lucio and Susan Sedlmeyer, who was Lucio's advocate for the appeal hearing or also known |

| | |
|---|---|
| | as a Loudermill hearing. (**Exhibit** G ) |
| | Randi Weingarten emailed Lucio about Susan Sedlmeyer's state about impeded members from presenting evidence, which Weingarten negotiated, (**Exhibit H**) |
| | Leroy Barr emailed Lucio about his audio recording between Lucio and Susan Sedlmeyer. (**Exhibit I**) |
| Ramkissoon did not cite a document(s) to support his claim, witnes (es) that could corroborate his story, and/or audio recording(s) | On July 8, 2015, Betsy Combier and Lucio spoke about Edward Farrell's appeal being ground zero. Betsy confirmed to Lucio that Farrell's appeal was the first case that she became aware of where the UFT and the DOE deprived members/employees of all their procedural due process rights. (**Exhibit J**)[13] |
| The definition for delusional[14] is:<br><br>adjective<br>1.<br>having false or unrealistic beliefs or opinions: Senators who think they will get agreement on a comprehensive tax bill are delusional.<br>2. | On August 12, 2015, Albania Sepulveda, of the UFT, wrote and acknowledged that the Office of Appeals and Review did not provide the UFT with a complete observation report for April 23, 2014 and asked Lucio, if he had a complete observation report. Lucio was not provided a complete report for April 23, 2014 or May 28, 2014 for his Loudermill hearing on |

[13] Everyone Lucio spoke to about their Loudermill hearing has had similar deprivation of their rights and Betsy Combier has written about how the UFT and the DOE deprives members of their due process rights.
[14] From the internet

- 13 -

Psychiatry. maintaining fixed false beliefs even when confronted with facts, usually as a result of mental illness:

He was so delusional and paranoid that he thought everybody was conspiring against him.

Please take notice, the judges in the cases you cited were correct to call the plaintiffs delusional because the plaintiffs rested her allegations on opinions and beliefs that they did not have evidence or audio recordings to provide the court. This is why I have attached their complaints because my complaint cited evidence and, unlike Middleton, I was not placed mental institution.

Not to be offensive or disrespectful, I believe I could make an argument about Your Honor being delusional because I wrote Blassman lied about my rights to file motion for particularization and Your Honor wrote saw it as Blassman ruled against me—I am basing my comment on the definition of "delusional" because the written record does not support your finding. Although Your Honor is entitled to deference, an average person would think something is wrong with Your Honor. Please know,  Your Honor is not, by any means, like

May 4, 2015. (**Exhibit K**)

On March 1, 2016, Leroy Barr, UFT Secretary, stated that "The Committee asked to see a copy of the rubric." The Committee was informed that Lucio did not have a copy of Cole's illegal rubric because the Union did not process a grievance for it. In addition, Cole never provided Lucio with a copy and the DOE withheld the document. (**Exhibit L**)

Barr wrote, in addition, "..the Union cannot overcome the Department of Education's argument that no contractual provisions  were violated."

Problems with Barr's statement:

1. Sedlmeyer told Lucio that he could not present evidence at his appeal hearing
2. Union is aware of missing documents
3. Union is aware of an edited recording by the DOE (see Doc. No 29 at **Exhibit E**)
4. Union is aware that Lucio did not have a copy of the rubric Cole used
5. Union and the DOE are aware that Cole's rubric does not match the rubric presented on May 4, 2015 because Lucio sent DOE/UFT the audio

Middleton and I am not like Middleton because I have audio recordings and documents to support each and every allegation.

*[handwritten notes:]*

—Cole violated Art 8J of the CBA
—Union didn't want to process the grievance because of lawsuit which Battle said in front of Blossman
—the contract & F12,368 doesn't have Cole's rubric or evaluation procedures as being valid or legal
—Please see, Ross' Letter (Exhibit F)

recording of May 28, 2014

Then, there is the fact that Ms. Catherine Battle, Esq. tried to instill fear Lucio because she couched UFT's evidence to be used at PERB that Lucio did not want the contents of his emails be disclosed publicly. In an email, Lucio disclosed that he was rapped and HIV from it because the UFT was playing games.

On September 3, 2015, Albania Sepulveda, of the UFT, sent Lucio a "Notice of Claim" that UFT legal wrote for him to submit to the DOE. The following was written by Sepulveda: "Attached please find the notice of claim. It is important that you review, sign and serve the notice of on the New York City Department of Education by September 8th. Notices of claim may be served at the NYC Law Department's offices, which are located at 100 Church Street."

Attached is the notice of claim written by the UFT legal (**Exhibit M**)[15]

On October 15, 2015, Mary Atkinson, of the UFT, informed Lucio that the DOE would give him another appeal hearing, which was done by email. (**Exhibit N**)[16]. However, there was a

---

[15] Lucio must have deleted the original email
[16] Lu

stipulation off that Lucio needed to drop the PERB case. Because the UFT did not mention in the stipulation about signed observation reports or the fact that DOE would comply with arbitrated decisions to the observation reports written by Cole; Lucio emailed Atkinson that he would only agree to the stipulation, if the DOE would give Lucio the observation reports that contained his signature. By not complying with arbitration decisions, the UFT and the DOE violated LMRA 301 because of how the adverse rating affected Lucio.

1.[17]    In F 12, 347 DOE Legal stated, "Regarding the "Rating Pedagogical Staff Members" document, I have been informed that this is not department policy."

Please Take Notice, DOE Legal said in F12, 345 that Rating Pedagogical Staff Members: Teaching for the 21st Century is contractual and is used for teachers that are rated under the S or U system. This information also appears on the UFT's website for teachers evaluated under the S or U evaluation system.  Please see read number 3 for additional reasons for the

[17] This is taken from the FOIL appeal that I am currently drafting.

obvious lie and criminal conduct.

In F12, 368, the FOIL Unit stated that Teaching for the 21st Century is a valid negotiated term of the current contract. The responses are not logical.

2.      Regarding the "Appeal Process" document, I have been informed that this is not department policy.

Please Take Notice, I have documented Mr. Todd Drantch switching his story on this one...Mr. Freidman, you are a criminal and I do not expect much from you, like Courtenaye Jackson-Chase. In addition, I have heard other appellants' audio recordings recently and this statement does not match the statements made on their audio recordings. The appellants' audio recordings matches Appeal Process manual because anyone can hear hearing officer or the UFT advocate cite the manual...you are a criminal!!!

3.      Regarding the "Formal and Informal Observations" February, 1998 Office of Labor Relations memo, I have been informed that this is not department policy.

According to F12, 368, above-referenced memo is currently a procedure negotiated between the UFT and the DOE. The only differences are, the words "memorandum" and who wrote the memo were whited out in F12, 368. But, Chancellor Crew's name appears in the above-referenced memo and as part of negotiated terms for observations procedures and the process, as written in the memo and in F12, 238, is verbatim.

Please Take Notice , A recent arbitration ruling with significance for more than 5,000 teachers reinforces the UFT position that principals must conduct separate pre-observation and post-observation conferences when formally observing UFT members who are still rated under the Satisfactory/Unsatisfactory system. Arbitrator Marlene Gold found that a principal's acknowledged, so-called practice of making the post-conference for one formal observation the pre-observation conference for the next violated the UFT-DOE contract. Her ruling stressed the "clear and unambiguous" language of the contract regarding the need for separate and distinct conferences before and after a formal observation.

The arbitrator relied upon the testimony of

UFT representatives when ruling that a preobservation conference must focus on the specific content of the lesson to be observed and the areas to be evaluated.

Gold ordered the formal observation report in question removed from the file of the teacher who filed the grievance. She also said that it could not be considered in determining the teacher's overall rating for that school year.

UFT Grievance Director Ellen Gallin- Procida said the arbitrator's ruling was important "because it confirms the different, but equally important roles of the pre- and post-observation conferences in supporting a teacher's professional growth."

The principal also acknowledged at the arbitration hearing that she did not announce formal observations in advance — another violation, according to Gold.

With respect to the principal's lack of notice, Gallin-Procida said the arbitrator's ruling "confirms that a formal observation is one where the teacher knows in advance when an administrator is coming."

UFT members most affected by the arbitration decision include speech and pre-K teachers and teachers in the Absent Teacher Reserve and others not covered by the Advance teacher

| | |
|---|---|
| 1 | evaluation system. |
| 2 | Mindy Karten Bornemann, the speech |
| 3 | improvement chapter leader, said she was |
| 4 | delighted with the unambiguous language of |
| 5 | the ruling. "The pre-observation conference |
| 6 | gives our members the opportunity to discuss |
| 7 | their lesson prior to their formal observation so |
| 8 | they can do their very best," she said. |
| 9 | |
| 10 | |
| 11 | 4.      Regarding the Chief Executive's |
| 12 | Memorandum No. 80, "Performance Review |
| 13 | and PD for Teacher" March 31, 1998 memo, I |
| 14 | have been informed that this memo was |
| 15 | rescinded by Chancellor Levy by |
| 16 | memorandum, dated June 6, 2000, and this |
| 17 | memo is not department policy. Again, the |
| 18 | items contained in "Memorandum No. 80" is |
| 19 | found in F12, 368 and F12, 368 states that F12, |
| 20 | 368 is part of observation procedures |
| 21 | negotiated by the UFT and DOE. |
| 22 | |
| 23 | Please see read number 3 for additional reasons |
| 24 | for the obvious lie and criminal conduct. |
| 25 | |
| 26 | |
| 27 | B.      The Appeal for Information |
| 28 | |

The records that were denied (lied about) include the above numbered 1 through 4. Please Take Notice, 1 through 4 are part of collective bargaining agreement for Teaching in the 21th Century.

This does not make any kind of sense that 1 through 4 is a contractual provision in F12, 345 and it was arbitrated in 2016. Because 1 through 4 were arbitrated recently, the items 1 through 4 holds true for the system under Danielson.

I need clarification because the statements in F12, 375 and F12, 347 do not match each other. The same item cannot, logically, be valid contractually and then not a policy.

As required by the Freedom of Information Law, the head or governing body of an agency, or whomever is designated to determine appeals, is required to respond within 10 business days of the receipt of an appeal. If the records are denied on appeal,   please explain the reasons for the denial fully in writing as required by law.

1   For the foregoing reasons, the Board respectfully requests that the Court grant the

2   Board's motion for reconsideration and vacate its prior decision, thereby permitting the rule to

3   go back into effect pending the resolution of the remaining issues in this litigation, and that the

4   Court grant summary judgment to the Board in this matter.

5

6   Dated: 1/30/17

7

8                                                                    Lucio Celli
                                                                     Defendant in Pro Per  se

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28