# Exhibit E

AMERICAN ARBITRATION ASSOCIATION

------- ---------- -------------------------X

In the matter of Arbitration between

New York City Department of Education,
                                (Employer)

        -and-

United Federation of Teachers, Local 2,
AFL-CIO,
                        (Union)

Re:   M█████ H█████
AAA Case No.: ██████████████
--- ---- ------------------------------X

Before:    Deborah M. Gaines, Arbitrator

Appearances:

        For the Board:
        Allison Biller, Esq.

        For the Union:
        Michael Friedman, UFT Representative

Hearing Date:   June 18, 2010

        This proceeding involves a claim that the Department
of Education ("DOE" or "the Department") violated Articles
15 and 20 of the parties' collective bargaining agreement
by denying the Grievant a per session summer teaching
position for the summer of 2007.  The dispute being
unresolved during the stages of the grievance process was
submitted by the Union to arbitration, and a hearing was

held before the undersigned Arbitrator at the offices of the American Arbitration Association in New York, NY on June 18, 2010.

### Issues:

The parties were unable to agree upon a stipulated issue and agreed to let the undersigned determine the issue.   After reviewing both parties' submissions and hearing the evidence in the case, I have framed the issue as follows:

> Did the Department violate Articles 15 and 20 of the parties' collective bargaining agreement when it withdrew the social studies summer per session teaching position from the Grievant, Mark Henle, on June 26, 2007?  If so, what, consistent with the parties' agreement, shall be the remedy?

### Relevant Language

**Article 15 (2)**
Retention
Prior service shall govern in the retention of per session teachers employed on a regular basis in per session activities as follows:

a. Teachers with at least two years of continuous satisfactory service in a particular activity shall have priority for retention in the same activity for the following school year.  Teachers with retention rights in an activity will not have those rights if their service is interrupted for a period of not more than one year because of sick leave without pay or involuntary change of day school session, or sabbatical leave.  Such teachers must return to service in the same activity at the first reorganization of the activity following the interruption of their service for the reasons stated above.

2

## Background

The parties stipulated to the following facts:

1. On June 26, 2007, Mark Henle received a U rating for the rating period August 31, 2006 through June 27, 2007.
2. The Grievant appealed his U rating on June 28, 2007.
3. He received a denial of the appeal dated 12/21/2007.
4. He applied for Middle School Social Studies district instructional program per session in a timely manner for the summer 2007.
5. The Grievant was originally assigned to the position on 6/21/07 and the offer was withdrawn 6/28/07.

In addition, The Grievant testified he teaches junior high school social studies and he applied to teach social studies during summer school as a per session activity. The Grievant alerted the Department he received a U rating for the 2006-2007 academic year. The Department acknowledged his U rating was the sole reason the position was withdrawn. The Grievant received "S" ratings for the subsequent academic years.

## Positions of the Parties:

### Union:

The Union contends the Department violated the agreement by withdrawing the per session activity from the Grievant. They note the Grievant met the conditions for exercising retention rights under Article 15C2. He had completed over two consecutive years of satisfactory

3

service in the activity and, therefore, under the
agreement, had priority to retain the position for the
following year (summer 2007). The Union maintains the
Department had no basis to not retain him in the position
because he timely exercised those rights and, therefore,
met all the conditions to retain the activity for which he
held retention rights.

The Union asserts that a number of arbitration
decisions have consistently upheld retention rights.
Specifically, they cite Arbitrator Symonette and Arbitrator
Cohen's decisions in support of their contention that a
teacher with retention rights has the right to continue in
their position as long as they meet the contractual
requirements contained in Article 15C2. They contend those
rights take precedence.

The Union argues the Department's reliance on the
decision by Arbitrator Riegel in the Summer School Per
Session Award is misplaced. They note that Award relied
upon an Appellate Division case, which vacated an
arbitration award that was subsequently overturned by the
Court of Appeals. Therefore, they argue the case is moot
at this time.

Finally, while the Union acknowledges there could be a
circumstance in which a person holding retention rights to

4

a position might become unqualified, they argue those circumstances are not present here. They contend the qualification at issue - having two years of academic year "S" ratings - has no nexus to the summer activity for which the Grievant held retention rights. They note the activity is different than an academic year position. They argue the qualification is an arbitrary criterion because the Grievant received more than two consecutive "S" ratings in the actual activity. Thus, after meeting that condition, it would be arbitrary and capricious for the Department to conclude he was not longer qualified for the position, according to the Grievant.

They note further that extinguishing the Grievant's retention rights under these circumstances is particularly unfair because he subsequently received an S rating the following academic year. They argue the Grievant is being severely punished because he is in effect permanently barred from holding a per session activity in the future. They urge the Arbitrator to sustain the grievance for all these reasons and restore him to his per session activity and make him whole in all other respects.

5

**Department**

The Department contends the withdrawal of the per summer session teaching position from the Grievant did not violate the contract. They argue the Grievant's retention rights did not entitle him to the position.  Rather, they argue, they merely provided the Grievant with a preference for the activity. They assert the Grievant failed to meet the threshold requirements to: 1) apply for the position or activity; and 2) meet the selection criteria contained in the posting for the particular activity.

Specifically, the Department notes, the Grievant failed to meet the selection criteria contained in the posting.  They note the posting required the selectee to have satisfactory performance from September 1, 2005 through June 30, 2007. Since the Grievant received a U rating for the 2006 - 2007 school year, he was not qualified for the position and therefore his retention rights were "nullified", according to the Department.

The Department argues prior case law and arbitration decisions demonstrate it has the unfettered authority to determine and set the qualifications for a position. The Department acknowledges the Appellate Division case cited in Arbitrator Riegel's "summer session" Award was overturned.  However, they argue the underlying contention

6

that the Department has the right to set qualifications for a position was never disturbed by the Court of Appeals and, therefore, the reasoning underlying the Riegel Award is still sound.

The Department acknowledges that in setting the qualifications for a position, the qualifications must be reasonably or rationally related to the position. They contend the academic year "S" rating qualification fully meets this standard. They note Charles Peeples, Director of Field Operations (and formerly the Director of Human Resources for Queens and District 75) testified the requirement to have "S" ratings for two academic years was instituted to ensure the continuity of quality instruction in the summer school program. The Department argues the Department implemented this "policy" following the F̶ Arbitration Award in which the Arbitrator found the Department violated Article 15 when it denied a teacher with retention rights a per session activity who had received a U rating for the academic year because the requirement was not one of the enumerated qualifications for the position. The Department contends it remedied this failure and the Grievant in this case failed to meet the threshold requirements of the position. Therefore, they argue, the Grievance must be denied.

7

**Opinion:**

Based upon my careful review of the credible record evidence, I find the Department did not violate the contract when it withdrew the summer school per session activity from the Grievant on June 26, 2007. My reasons follow.

There is no factual dispute in this case. The parties agree the Grievant had retention rights to the per session activity in question. They also agree that the posting for the activity required the applicant to have satisfactory performance for academic years 2005-2007 and the Grievant failed to meet that condition when he received a "U" rating on June 26, 2007. At issue then is the relationship between the selection criteria for a per-session activity and the retention rights of an individual to the position.

Under the specific facts and circumstances of the instant matter, I do not find any record support for the Union's contention that the selection criteria requiring satisfactory academic year performance to be arbitrary and capricious. The Grievant is a social studies teacher and received a U rating for academic year 2006-2007. The position in question was to teach social studies during summer school. Thus, it appears rationally related to the position. I credit Mr. Peoples' testimony that there is an

8

even greater need for satisfactory performance necessary because the curriculum is abbreviated.

After carefully reviewing the Awards and case law submitted by the parties, 1 find no basis to find the withdrawal of the Grievant's position to violate the contract.  In fact, the parties' agree that the Department has the right to set the qualifications for a position so long as they are not arbitrary, capricious or discriminatory.  After reviewing the circumstances of the instant matter, 1 find the decision made by the Department that the Grievant was not qualified to exercise his retention rights to have satisfied this criteria.

**Award:**

The Grievance is denied.

Dated: July 16, 2010

_____
Deborah M. Gaines
Arbitrator

**A F F I R M A T I O N**

STATE OF NEW YORK  :
COUNTY OF NEW YORK)

I, Deborah M. Gaines, Esq., affirm that I am the individual described in and who executed the foregoing instrument, which is my Award.

Dated:        July 16, 2010

_____
Deborah M. Gaines

9

# Exhibit F

**From:** Adam Ross <ARoss@uft.org>
**To:** enzo0mad <enzo0mad@aol.com>
**Subject:** Letter from Adam Ross, UFT General Counsel
**Date:** Tue, Jul 22, 2014 2:23 pm
**Attachments:** DOC072214.pdf (92K)

Please see attached.


Adam S. Ross
General Counsel
United Federation of Teachers
52 Broadway
14th floor
New York, NY  10004


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**UFT**

United Federation of Teachers
*A Union of Professionals*

Adam S. Ross
Direct Dial: 212-701-9420
ARoss@uft.org

July 22, 2014

Lucio Celli
2743 Seymour Avenue
Bronx, New York 10469-5523

Dear Mr. Celli:

I write in response to your emails to myself and various UFT and NYSUT officials since my letter dated June 27, 2014.

With respect to your claim that you were not paid for your time spent on SESIS, all UFT-represented employees who believed that they were entitled to payment were advised to file a SESIS complaint form with their borough office. Accordingly, please contact Mark Collins at mcollins@uft.org in the grievance department to aid you in receiving any back pay that you may be owed.

As indicated to you on numerous occasions, if you feel that there has been a violation of the collective bargaining agreement covering teachers ("CBA"), you may file a grievance with either your chapter leader or borough office. With respect to your summer per session grievance, the grievance process must be allowed it run its course in order for a determination to be reached on this issue. Your grievance was heard at Step 1 on July 1, 2014. With respect to your claim that you have not been provided with the ratings sheets from your evaluation after numerous requests to Ms. Bernard, you may file a grievance with your chapter leader or borough office indicating that there has been a violation of Article 21A.

If you believe you have been discriminated against on the basis of your race, you may file an Article 2 grievance with your chapter leader or borough office. You have previously been advised of your right to file a complaint with the Office of Equal Opportunity ("OEO") if you believe you are being discriminated against. As indicated in your email communications to various UFT officials, you have already filed an appeal of your "Unsatisfactory" ("U") Rating for the 2013-2014 school year and have retained a private attorney to represent you in both your "U" Rating appeal and with respect to your OEO complaint.[1] To the extent that another attorney is representing you with regard your OEO complaint, I am unable to assist you. However, with respect to your "U" Rating appeal, please be advised that any circumstances that the employer created that adversely affects your performance may potentially be appropriate to be dealt with in the ratings appeals process. The UFT will represent you in your rating appeal, if you are "U" rated.

It is my understanding that you have had ongoing discussions with Bonnie Sepulveda, Special Representative in the UFT Bronx borough office, regarding your request to file an Article 23 special complaint against Ms. Bernard and Mr. Cole. According to the CBA, such special complaint is one made by a member of the bargaining unit that claims that "persons or groups are engaging in a course of harassing conduct, or in acts of intimidation, which are being directed against him/her in the course of his/her employment." See Article 23A of the CBA. If it is determined that your complaint has sufficient merit, the UFT will follow the normal steps and procedures for determining whether to file an Article 23 special complaint. It may be some time before a determination is made, as the special complaint process will not resume until September.

---

[1] A UFT-represented employee cannot be represented by counsel in ratings appeals.

Officers: Michael Mulgrew President, Emil Pietromonaco Secretary, Mel Aaronson Treasurer, LeRoy Barr Assistant Secretary, Mona Romain Assistant Treasurer
Vice Presidents: Karen Alford, Carmen Alvarez, Catalina Fortino, Anne Goldman, Janella Hinds, Richard Mantell, Sterling Roberson

I am in receipt of the screen shot of the email from your principal sent to you on January 10, 2013. Please forward to me the original email including the attachment(s) so that I may review its contents. If it is determined that your principal has acted in an improper manner with respect to your letter to file, the UFT will take appropriate action.

Additionally, it is my understanding that you have been approved for your sabbatical and have already been informed of such.

Once again, the Union is happy to answer your questions with respect to your rights; however, please keep in mind that the frequency with which you ask the same questions to various members of our staff make it difficult to respond in an efficient and expeditious manner.

Sincerely,

Adam S. Ross
General Counsel
United Federation of Teachers

# Exhibit G

From: Adam Ross <ARoss@uft.org>
To: 'Lucio' <enzo0mad@aol.com>
Cc: Howard Schoor <hschoor@uft.org>; Ellen Procida <eprocida@uft.org>; Diane Mazzola <DMazzola@uft.org>
Subject: FW: Sections 172.20 and 175.25 of the Penal Law
Date: Wed, May 27, 2015 4:52 pm

Dear Mr. Celli:

With respect to your allegation that a portion of the recording from your May 4, 2015 U-rating appeal hearing was "edited" in the copy sent to you by OAR, please provide me with that copy so that I may compare the two recordings. In the meantime, the UFT is reaching out to the advocate who represented you at your hearing to review the recording as well.

Additionally, if you believe that a person has committed a crime against you, you may contact the police or other appropriate authorities.

Sincerely,
Adam Ross

Adam S. Ross, Esq.
General Counsel
United Federation of Teachers
14th Floor
52 Broadway
New York, NY 10004
(212) 701-9420

CONFIDENTIALITY NOTICE: This communication (including any attachments) is confidential and privileged. The information is intended for the sole use of the addressee. If you are not the intended recipient, you are advised that any disclosure, copying, distribution, use, or the taking of any action in reliance upon this communication is prohibited. If you have received this communication in error, please notify the sender by electronic mail or by telephone (212-701-9420) immediately and delete this communication (including any attachments).

-----Original Message-----
From: Celli Lucio (08X519) [mailto:LCelli@schools.nyc.gov]
Sent: Tuesday, May 26, 2015 11:08 AM
To: Adam Ross; Caputo Virginia; Greenfield Robin; Chancellor Carmen Fariña; Fariña Carmen
Cc: Michael Mulgrew; rweingarten@aft.org; kmagee@nysutmail.org; Singer Robin F.; Drantch Todd; dstrom@aft.org; Jackson-Chase Courtenaye; cbattle@nysutmail.org; eengier@uft.org; LeRoy Barr; epeitromonaco@uft.org; Levy Odelia; eprocide@uft.org; Saul Zalkin; Peeples Charles (Human Resources)

Subject: RE: Sections 172.20 and 175.25 of the Penal Law
Importance: High

The UFT should have informed me that I could have pressed charges against Ms. Bernard when I informed them that she submitted fake documents -- -

---

From: Celli Lucio (08X519)
Sent: Tuesday, May 26, 2015 11:04 AM
To: ,; Caputo Virginia; Greenfield Robin; Chancellor Carmen Fariña; Fariña Carmen
Cc: mmulgrew@uft.org; rweingarten@aft.org; kmagee@nysutmail.org; Singer Robin F.; Drantch Todd; dstrom@aft.org; Jackson-Chase Courtenaye; cbattle@nysutmail.org; eengier@uft.org; lbarr@uft.org; epeitromonaco@uft.org; Levy Odelia; eprocide@uft.org; szalkin@uft.org; Peeples Charles (Human Resources)
Subject: RE: Sections 172.20 and 175.25 of the Penal Law

I just realized that Sections 172 and 175 would apply to Ms. Bernard, too. Where do I file charges?

---

From: Celli Lucio (08X519)
Sent: Tuesday, May 26, 2015 10:58 AM
To: ,; Caputo Virginia; Greenfield Robin; Chancellor Carmen Fariña; Fariña Carmen
Cc: mmulgrew@uft.org; rweingarten@aft.org; kmagee@nysutmail.org; Singer Robin F.; Drantch Todd; dstrom@aft.org; Jackson-Chase Courtenaye; cbattle@nysutmail.org; eengier@uft.org; lbarr@uft.org; epeitromonaco@uft.org; Levy Odelia; eprocide@uft.org; szalkin@uft.org; Peeples Charles (Human Resources)
Subject: Sections 172.20 and 175.25 of the Penal Law

Dear Recipients,

Is the below statement true? If it is, I WANT TO PRESS CHARGES TODAY!!!!!!!!!!!!!!!!! I would like the name of the person that gave permission.

Sections 175.20 & 175.25, Penal Law
tampering with public records

§ 175.20 Tampering with public records in the second degree. A person is guilty of tampering with public records in the second degree when, knowing that he does not have the authority of anyone entitled to grant it, he knowingly removes, mutilates, destroys, conceals, makes a false entry in or falsely alters any record or other written instrument filed with, deposited in, or otherwise constituting a record of a public office or public servant. Tampering with public records in the second degree is a Class A misdemeanor.

§ 175.25 Tampering with public records in the first degree. A person is guilty of tampering with public records in the first degree when, knowing that he does not have the authority of anyone entitled to grant it, and with intent to defraud, he knowingly removes, mutilates, destroys, conceals, makes a

false entry in or falsely alters any record or other written instrument filed with, deposited in, or otherwise constituting a record of a public office or public servant. Tampering with public records in the first degree is a class D felony.

---

From: Celli Lucio (08X519)
Sent: Tuesday, May 26, 2015 9:42 AM
To: ,; Caputo Virginia; Greenfield Robin; Chancellor Carmen Fariña; Fariña Carmen
Cc: mmulgrew@uft.org; rweingarten@aft.org; kmagee@nysutmail.org; Singer Robin F.; Drantch Todd; dstrom@aft.org; Jackson-Chase Courtenaye; cbattle@nysutmail.org; eengier@uft.org; lbarr@uft.org; epeitromonaco@uft.org; Levy Odelia; eprocide@uft.org; szalkin@uft.org; Peeples Charles (Human Resources)
Subject: Edited Recording sent by OAR

Dear Recipients,

My recording of May 4, 2015 should not differ from the OAR's recording. Nevertheless, the recording sent to me by OAR is edited and did not have the hearing officer's statement of "the appellant cannot ask the principal any questions." The edited portion took away my due process right!

Could anyone furnish me with an explanation by the close of business today? I would like to include the statement to Judge Blassman, Administrative Law Judge at PERB.

I would appreciate the cooperation in this matter. In addition, I informed Ms. Procide, UFT Director Grievances, that I would like to grieve the edited recording sent to me and the fact that the OAR did not provide me with my due process rights. In fact, they allowed fake documents to submitted into evidence, but they also sent me an edited recording to me--to me the actions are the same.

Sincerely,
Lucio Celli

---

From: Celli Lucio (08X519)
Sent: Monday, May 25, 2015 5:01 PM
To: ,
Cc: mmulgrew@uft.org; rweingarten@aft.org; kmagee@nysutmail.org; Singer Robin F.; Drantch Todd; dstrom@aft.org; Jackson-Chase Courtenaye; cbattle@nysutmail.org; eengier@uft.org; lbarr@uft.org; epeitromonaco@uft.org; Bernard Anne (79K755); Levy Odelia; Guillaume Lourdes; eprocide@uft.org; szalkin@uft.org
Subject: About May 4, 2004

Dear Recipients,

Please start the recording at 30:16. From 30:16 to the end of the recording, this portion is totally edited out of the copy sent to me by the OAR. I knew this would happen, but I had to wait until the copy was sent to me by OAR.

Fake rubric, fake documents and now a totally edited recording from the Department. In addition, Ms. Bernard lied on May 4, 2015.

I need an explanation of Ms. Patricia Lavin's behavior by the Department and why the copy that I received was edited.

To Drantch,

Please be advised that this is the why the Department cannot be trusted to provide me with my due process rights. You will have my full response to PERB this week. I assume the Department will explain the editing that they did on August 18, 2015--by the way, this will be my new charge against the city.

To Ms. Procide,

Please forward this recording to Ms. Saul Zalkin because it is related to grievance number X57577 and inform Mr. Saul Zalkin to continue with this grievance.

Thanks,
Lucio Celli

*************************************************************************
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
*************************************************************************

**From:** Albania Sepulveda <ASepulveda@uft.org>
**To:** 'Lucio' <enzo0mad@aol.com>
**Subject:** Missing documents
**Date:** Wed, Aug 12, 2015 5:29 pm

Hi Lucio,

In reviewing your case file, there is a formal observation report in the package of documents dated 4/23/14. It appears to be missing some pages. Is so can you please provide me with copy of it. Also, please let me know what was edited in the recording of the hearing? Please provide proof of it. Do you have the unedited tape? Please bring us copy. Thanks.

*Bonnie Sepulveda*
*Special Representative*
*UFT Bronx Borough Office*
*2500 Halsey Street*
*Bronx, NY 10461*
*718 379-6200*
*718 862-6044*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From:** Lucio <enzo0mad@aol.com>
**To:** Betsy Combier <betsy.combier@gmail.com>; Harvey400 <harvey400@aol.com>
**Subject:** Fwd: Notice of Claim
**Date:** Thu, Sep 3, 2015 2:42 pm
**Attachments:** notice of claim.pdf (4052K)

I read some of it and it's wrong

Sent from my iPhone

Begin forwarded message:

> **From:** Albania Sepulveda <ASepulveda@uft.org>
> **Date:** September 3, 2015 at 2:32:06 PM EDT
> **To:** "'Lucio'" <enzo0mad@aol.com>
> **Subject: Notice of Claim**
>
> Hi Lucio,
>
> Attached please find the notice of claim. It is important that you review, sign and serve the notice of on the New York City Department of Education by September 8th. Notices of claim may be served at the NYC Law Department's offices, which are located at 100 Church Street.
>
> Enjoy your Labor Day weekend.
>
> *Bonnie Sepulveda*
> *Special Representative*
> *UFT Bronx Borough Office*
> *2500 Halsey Street*
> *Bronx, NY 10461*
> *718 379-6200*
> *718 862-6044*
>
> *************************************************************************
> The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
> *************************************************************************

# Exhibit H

Re: Audio recording

**From:** Randi Weingarten, Office of the President <weingar@aft.org>
**To:** Lucio <enzo0mad@aol.com>
**Cc:** Adam Ross <ARoss@uft.org>; Michael Mulgrew <mmulgrew@uft.org>; Karen Magee, AFT VP <kmagee@nysutmail.org>; Catherine Battle <cbattle@nysutmail.org>; Howard Schoor <hschoor@uft.org>; Alice Cooper-Jackson <ajackson@uft.org>; David Strom Legal <dstrom@aft.org>
**Subject:** Re: Audio recording
**Date:** Fri, Jun 12, 2015 6:19 am

Randi

Sent from my
iPad

> On Jun 12, 2015, at 3:57 AM, Lucio <_____> wrote:
>
> Dear Mr. Ross and Ms. Battle,
>
▼ Here is a recording of the way my colleague

Mr. Celli— I am in receipt and _____ all, your emails, it is
obvious you are frustrated with ____ the _____ and the results. It seems, as
a result you have made _____ a _____ ___ ___ ___ engaged in conduct such as
taping conversations, I assume t_____ __ _____ others, I ask you to
provide our lawyers with the ph___ _____ ___ _____. I ____ Adam Ross has
been in touch, and I ask you to talk to him directly.

# Exhibit I

**From:** LeRoy Barr <lbarr@uft.org>
**To:** enzo0mad <enzo0mad@aol.com>
**Subject:** Lucio Celli
**Date:** Wed, Jul 29, 2015 1:07 pm

Dear Mr. Celli:

I am Staff Director of the UFT and have been provided with copies of your most recent emails to various UFT and DOE officials. In light of the allegations made against Adam Ross, the UFT's General Counsel, I will be responding to your inquiries from this point forward.

Regarding some of your allegations including an alleged "secret agreement" and threats of physical harm against you, it appears that Mr. Ross had asked you to provide him with the complete recordings you claim to possess. I will be happy to review the complete recordings and look into these matters should you to send them to me.

It is my understanding that there is a legal intake pending regarding the denial of your U-rating appeal, which appears to be the subject of many of your emails to the UFT. The legal intake is currently being reviewed by legal counsel. Because the New York State United Teachers Office of General Counsel ("NYSUT") is representing the UFT against you in your improper practice charge at PERB, the matter has been referred to outside counsel. As soon as a determination has been made, you will be notified.

In the meantime, if you have any additional concerns, you may raise such issues with your borough office. The borough office will be able to provide with you the best advice for how to proceed on any given issue.

Sincerely,

LeRoy Barr
Director of Staff
Assistant Secretary
United Federation of Teachers
(w) 212-510-6413
(f)  212-331-6319
LBarr@uft.org

*****************************************************************************
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
*****************************************************************************

# Exhibit J

**From:** Betsy Combier <betsy.combier@gmail.com>
**To:** Betsy Combier <betsy.combier@gmail.com>; SirHarvey400 <Harvey400@aol.com>; Lucio C <enzo0mad@aol.com>
**Subject:** Fwd: Ed Farrell's appeal to the Commissioner of Education is attached.
**Date:** Thu, Jul 9, 2015 12:03 am
**Attachments:** farrell_notice_of_petition_revised_12-28-04.doc (36K), farrell_verified_petition_final_version_12-30-04.doc (88K), farrell_verified_reply_version_12_5-1-05.doc (406K), farrell_memo_of_law_caption_5-23-05.doc (34K), farrell_memo_of_law_final_version_5-23-05.doc (168K), farrell_verified_reply_legal_back_5-1-05.doc (27K)

---

Thanks for find these papers, Harvey!! We worked so hard on this, only to be dismissed. Ugh. ☹

Betsy
——— Forwarded message ———
From: **Harvey400** <harvey400@aol.com>
Date: Wed, Jul 8, 2015 at 5:44 PM
Subject: Ed Farrell's appeal to the Commissioner of Education is attached.
To: enzo0mad@aol.com
Cc: betsy.combier@gmail.com

7/8/15

Hi, Lucio!

Ed Farrell's appeal to the Commissioner of Education is attached.

He lost the appeal, but that's because NYSED and their attorneys are biased in favor of school districts.

www.counsel.nysed.gov/Decisions/volume45/d15308

www.counsel.nysed.gov/appeals/faqs

(See numbered paragraph 10 above, for example.  Can you imagine if the NYS Supreme Court made a similar statement with respect to Article 78s?)

DOE's Verified Answer was never scanned.

The exhibits were never scanned.

1/30/2017

Case 1:15-cv-03679-BMC-LB Fwd: Ed Farrell's appeal to the Commissioner of Education is attached 2ed of 91 PageID #: 1369

I have a paper copy of the complete pleadings packed away in one of my storage cartons, but I don't really know in which one.

I already sent you Ed's Chancellor's Committee report a while back.

Can you conveniently access it?

If not, I can look for the E-mail which had it attached, and then forward it to you.

If you want to do a Commissioner's appeal about the U-rating, you don't have much time to file.

Betsy had done some articles in which Ed was mentioned:

http://parentadvocates.org/index.cfm?fuseaction=article&articleID=6016

http://parentadvocates.org/index.cfm?fuseaction=article&articleID=6215

http://nycrubberroomreporter.blogspot.com/2014/12/unfair-procedures-used-to.html

Talk to you soon!

          Harvey


--
Betsy Combier
betsy.combier@gmail.com
ADVOCATZ
parentadvocates.org
NYC Rubber Room Reporter

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of EDMOND FARRELL,

                                        Petitioner,

                              v.

JOEL I. KLEIN, Chancellor, NEW YORK CITY
DEPARTMENT OF EDUCATION

                              Respondent,

from  a decision of the New York City Department of Education
dated November 29, 2004 by Deputy Chancellor CARMEN FARIÑA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO THE COMMISSIONER OF EDUCATION:

1.  At all the times hereinafter mentioned, Petitioner EDMOND FARRELL is a
    resident of 10 Dean Street, East Rockaway, New York 11563 in the County of
    Nassau, State of New York.

2.  At all the times hereinafter mentioned, Petitioner is a tenured mathematics teacher
    at John Adams High School, located at 101-02 Rockaway Boulevard, Ozone Park,
    New York 11417.

3.  The action of Respondent set forth in this VERIFIED PETITION began to occur
    during the 2003-2004 school year, which was the same year that Grace
    Zwillenberg ("ZWILLENBERG") was named as the Interim Acting Principal of
    John Adams High School, and who was later appointed as the Principal during
    that same school year.

4.  This was also the same school year that Bahaa Aboughaida ("ABOUGHAIDA")
    was appointed as the Math/Business Assistant Principal of John Adams High
    School.

5.  Up until the 2003-2004 school year, Petitioner received a "Satisfactory" rating for

1

nine school years in a row at John Adams HS under two previous principals, along with a number of "Satisfactory" observation reports.  The annual professional performance review forms are attached as Exhibit A.  Petitioner will make the observation reports available to the Commissioner upon request.

6.  However, for the 2003-2004 school year, Petitioner received an "Unsatisfactory" rating ("U-rating") and six "Unsatisfactory" observation reports.  The annual professional performance review form is attached as Exhibit B.  Petitioner will make the observation reports available to the Commissioner upon request.

7.  Such U-rating did not comply with the requirements of §100.2(o)(2) of the Regulations of the Commissioner of Education in that it was allegedly based on a flawed set of antiquated rating criteria that had not been developed cooperatively in consultation with representatives of the teachers, that had not been submitted in advance to parent groups and the United Federation of Teachers, and that had not been formally voted on during a public meeting of the  PANEL FOR EDUCATIONAL POLICY OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK.

8.  In addition, the U-rating was allegedly based primarily on the contents of the six lesson observation reports, and, therefore, was not accompanied by "appropriate supporting data."

9.  Lesson observation reports have been held by the Second Appellate Division in Elentuck v. Green (202 AD2d 425) to not contain "statistical or factual tabulations or data."  They "consist solely of advice, criticisms, evaluations, and recommendations."

10.  The former Secretary of the New York City Board of Education, Ron LeDonni, and two former Board Members, Hon. Carol Gresser and Hon. Irene Impellizzeri, had accepted the judicial decision in Elentuck v. Green as being characteristic of observation reports, in general, and not just the collection at issue in that particular case.  As Exhibit C, I am introducing my September 16, 2004 letter to

2

Respondent KLEIN, which contains a May 13, 1998 letter from Mr. LeDonni to Mr. Irving Schachter as an attachment.

11. Petitioner's U-rating was arbitrary, capricious, irrational, and issued in bad faith.

12. No facts and no statistics were submitted by Respondent to support the U-rating.

13. No instructions to staff that affect the public, nor any other type of instructions, were submitted by Respondent, accompanied by allegations that Petitioner had willfully violated such instructions.

14. During the course of Petitioner's employment during the 2003-2004 school year, Petitioner had violated no contractual provisions, no provisions of the Education Law, no Regulations of the Board of Regents, no Commissioner's Regulations, no By-laws of the PANEL FOR EDUCATIONAL POLICY, and no Chancellor's Regulations.

15. In fact, Respondent alleged that Petitioner had committed such violations.

16. During the course of Petitioner's employment during the 2003-2004 school year, neither  Principal  Mrs. Zwillenberg nor AP Aboughaida, nor anyone else, issued Petitioner any individual "instructions to staff that affect the public," nor any other type of individual instructions with respect to making modifications of his teaching service.

17. With respect to general school or departmental memoranda, Petitioner implemented any policies that he was contractually or legally obligated to.

18. However,  ZWILLENBERG, ABOUGHAIDA, and WAXMAN made several suggestions to Petitioner.

19. Petitioner issued a September 16, 2004 letter of rebuttal to Respondent Joel I. Klein ("KLEIN") and  others, including Virginia Caputo ("CAPUTO"), as well as to Dr. Elizabeth Arons, relating to the U-rating.  (Exhibit C)

20. The letter was not responded to.

21. Within Petitioner's September 16, 2004 letter, appears the statement, "An examination of each of the six observation reports that accompanied my U-rating

3

will clearly reveal that <u>no</u> instructions or directives had been given to me, but rather suggestions." Petitioner then proceeded to quote from each of the six reports.

a) 10/24/03 observation by Bahaa Aboughaida (Assistant Principal):

> "During future visits to your classes, I look forward to observing your implementation of the suggested strategies that we have discussed."

b) 12/1/03 joint observation by Grace Zwillenberg (Principal) and Bahaa Aboughaida (Assistant Principal):

> "During future visits to your classes, I look forward to observing your implementation of the suggested strategies that we have discussed."

c) 12/22/03 observation by Bahaa Aboughaida (Assistant Principal):

> "During future visits to your classes, I look forward to observing your implementation of the suggested strategies that we have discussed."

d) 3/15/04 observation by Bahaa Aboughaida (Assistant Principal):

> "During future visits to your classes, I look forward to observing your implementation of the suggested strategies that we have discussed."

e) 5/13/04 joint observation by Grace Zwillenberg (Principal) and Bahaa Aboughaida (Assistant Principal):

> "During future visits to your classes, I look forward to observing your implementation of the suggested strategies that we have discussed."

f) 6/7/04 observation by Ben Waxman (Regional Instructional Supervisor):

> "During future visits to your classroom, I look forward to observing your implementation of the strategies and methodologies suggested and discussed."

22. Petitioner was under no contractual or legal obligation to implement any of the suggestions.

4

23. On March 6, 1986, (at the time) Commissioner of Education Gordon Ambach determined <u>Appeal of Board of Education of the Orchard Park Central School District</u> (25 EDR 331).

24. Commissioner Ambach stated on page 332:

> "Absent a violation of an established school rule or a direct order from a supervisor, respondent's behavior would not constitute neglect of duty.  Although petitioner identifies certain provisions of the school building manual as the source of a rule against leaving students to work unsupervised in the hallway, those provisions are expressed in terms of suggestions to teachers rather than directives. Upon careful review of the record, I find that petitioner failed to establish that respondent's conduct breached any mandatory school rule or directive by a supervisor."

25. A New York City teacher's annual rating must be based on criteria set forth in the professional performance review plan of the City School District of the City of New York.

26. Pursuant to §100.2(o)(2) of the Commissioner's Regulations, this plan was to have been developed cooperatively in consultation with representatives of the teachers, and a draft copy of the proposed plan should have been submitted to parent groups and employee union groups, so that they could offer comment, before being approved by the PANEL FOR EDUCATIONAL POLICY at a public meeting.

27. Petitioner was never furnished with a copy of the professional performance review plan that was in effect for the 2003-2004 school year.

28. Petitioner was never furnished with a copy of the professional performance review plan that was in effect for any other school year.

29. In the late 1980s, the Joint Commission on Integrity in the Public Schools ("the Gill Commission"), listened to many hours of testimony which included a great deal of information about staff ratings, including testimony provided by James T. Stein of the Office of Appeals and Reviews.

30. One of the findings of the Commission was that staff evaluations in the New York City School System are virtually meaningless.

31. On November 8, 2004, Petitioner attended an administrative hearing at the NYC Department of Education's Office of Appeals and Reviews, held in conjunction with By-law 4.3 of the PEP. (Exhibit D)

32. A statement of the duties and responsibilities of the Office of Appeals and Reviews, along with links to its three rating manuals may be found online at: www.nycenet.edu/offices/dhr/resources/appeal.aspx

33. The purpose of the administrative hearing was allegedly to review the propriety of Petitioner's U-rating, and to result in the issuance of a report containing findings and a recommendation.

34. Neither Petitioner, nor Petitioner's Union, had been informed that Petitioner was entitled to be represented at the hearing by an attorney.

35. On his own, Petitioner had learned that the Bylaws of the PANEL FOR EDUCATIONAL POLICY permit attorneys to represent teachers at the hearings.

36. Bylaw 4.3.3 states, in part, "The advisor need not be an attorney." (Exhibit D)

37. However, a publication of the Office of Appeals and Reviews, "The Appeal Process," states, on page 8, "In accordance with the By-laws the advisor may *not* be an attorney." (Exhibit E)

38. The United Federation of Teachers was not aware that attorneys may represent teachers at review hearings.

39. In fact, Patricia Ritter, a non-attorney, was assigned by the United Federation of Teachers to represent Petitioner.

40. Ms. Ritter, although well-meaning, was not familiar with the relevant Commissioner's decisions and judicial decisions relating to U-ratings and review hearing procedures.

41. Ms. Ritter did not cross-examine the "telephone witnesses" at any great length.

42. Ms. Ritter did not object to the lack of availability of Mr. WAXMAN, who had

authored one of the observation reports.

43. Pursuant to Bylaw 4.3.1, Hearing Officer MARIANNE ALVAREZ was to have
    written a report containing findings and recommendations.
    (Exhibit D)

44. Pursuant to Bylaw 4.3.1, this report was supposed to have been submitted to
    Respondent KLEIN for a final decision on the matter.  (Exhibit D)

45. A copy of the report was not furnished to Petitioner.

46. Upon information and belief,  Ms. Alvarez's report did not contain facts or
    statistics as Chancellor's Committee reports have been held to be deniable to
    members of the public pursuant to §87(2)(g) of the Freedom of Information Law.
    Elentuck v. Green (202 AD2d 425); McAulay v. NYC Board of Education
    (61 AD 2d 1048, aff'd 48 NY 2d 659)

47. The hearing was seriously flawed and represented a fundamental denial of due
    process.

48. Ms. Alvarez did not permit two of Petitioner's witnesses who were personally
    present in the office, Norman Scott and Betsy Combier, to testify.

49. Ms. Alvarez indicated that she had not been informed in advance that Petitioner
    had wanted to introduce any witnesses.

50. Ms. Alvarez was told that another witness, Irving Schachter, had agreed to testify
    by telephone but did not comment.

51. ALVAREZ permitted ZWILLENBERG and ABOUGHAIDA to give unsworn
    testimony by telephone.

52. ALVAREZ, Petitioner, and Petitioner's UFT adviser were unable to observe the
    demeanor and facial expression of these people.

53. ZWILLENBERG indicated that ABOUGHAIDA would make the opening
    statement at the administrative review.

54. Over a speakerphone, ABOUGHAIDA stated, "The 'unsatisfactory' rating was
    based primarily on the U-rated observations Mr. Farrell received, plus his

7

unwillingness to improve. He has a serious classroom management problem. He verbally teaches his students, and he refuses to follow either State Education Department, Region 5, the UFT, or the school policies when it comes to teaching such as cooperative group learning, kids engaged in the lesson, visual demonstrations, and so on. We've tried and still try to work with Mr. Farrell to help him improve. I meet with him on a weekly basis. I permanently removed disruptive students from his class. I just – I removed one student last week. I assigned him a buddy teacher. I've asked him to sit in other teachers' classrooms as well as mine. We attended study groups together, staff development, departmental meeting. Uh, we discussed cooperative group learning, classroom management. We talked about strategies to improve instruction. In short, Mr. Farrell insists on being defiant, and he's unwilling to improve or change his teaching technique."

54. ABOUGHAIDA lied during his unsworn telephone testimony by falsely indicating that he had asked Mr. Khelawan to be Petitioner's "buddy teacher."

55. Specifically, in response to Petitioner's question during cross-examination, "Who is my buddy teacher?", ABOUGHAIDA stated, "Mr. Khelawan."

56. In response to Petitioner's question during cross-examination, "When was he appointed to be my buddy, and when was I notified of it?", ABOUGHAIDA stated, "Yes, you were notified of it, uh, in the – in the dai... – in the weekly meeting we attended. We spoke about it. I asked you if you want Mr. Khelawan because I saw you constantly hanging around Mr. Khelawan. I said, 'If you want another one, we will assign you another one.' This has been going on forever."

57. At no point during the 2003-2004 school year, did ABOUGHAIDA assign Mr. Khelawan to be Petitioner's buddy teacher.

58. It wasn't until the 2004-2005 school year, after the hearing at the Office of Appeals and Reviews had concluded, that ABOUGHAIDA assigned Mr. Khelawan to be Petitioner's buddy teacher.

59. ABOUGHAIDA also lied during his opening statement by alleging that

Petitioner "refuses to follow...policies when it comes to teaching..."

60. On January 25, 1989, (at the time) Commissioner of Education Thomas Sobol

determined <u>Appeal of Board of Education of the City School District of the City</u>

<u>of New York</u> (28 EDR 302).

61. Commissioner Sobol stated on page 303:

> "After 16 days of hearing, the hearing panel unanimously
> recommended dismissal of all charges. The panel found
> that while respondent is not a 'good' teacher; is boring;
> does not consistently follow district policy; and maintains a
> narrow structured point of view in conducting his
> classroom; his performance did not fall below the minimal
> level expected of a 'reasonable teacher.' The panel found
> that respondent had a minimal level of competency to
> communicate facts; that he had knowledge of subject
> matter content; that he could motivate and interest students;
> that he maintained a classroom environment reasonably
> conducive to learning; and that he had an ability to assess
> and evaluate student performance. Based upon its
> assessment of these factors, the panel unanimously agreed
> that respondent had met the minimum level of competency
> which should be expected of a 'reasonable teacher.' The
> panel also unanimously rejected the charges of neglect of
> duty. The panel determined that there was no evidence that
> respondent did not fulfill his obligations, nor that he was
> unprepared to teach or that his lesson-plans or records were
> in any form of disarray."

> "The panel, in a commentary on respondent's teaching and
> questioning techniques, stated that there were no absolutes
> in teaching, and that respondent had to be evaluated for
> effectiveness. The panel decision notes the fact that
> respondent's students fared at least as well or better than
> the students of other teachers in the science department
> during the period covered by the charges."

62. At page 305, then Commissioner Sobol stated:

> "The issue of incompetency however is a more difficult
> one. In a classroom situation, incompetence in its simplest
> terms means that a teacher is unable to provide a valid
> educational experience for those students assigned to his
> classroom. The record before me supports the panel's

conclusion that petitioner also failed to prove this charge by
a preponderance of the credible evidence.  While I do not
feel that it should be the determining factor in every case,
the performance of respondent's students on the regents
examinations in both earth science and biology indicates
that respondent's students did as well as or better than the
students in similar classrooms in the same school.  There is
no evidence in the record that respondent's students were
substantially different in academic ability than students
assigned to other teachers in similar classes, or that any
other factor outside of respondent's classroom influenced
their performance on the examinations.  This tends to
support the panel's finding that respondent was able to
educate his students.  It is also my finding that respondent
provided a plausible explanation for the decisions which he
made concerning the conduct of his classes and his
methods of instruction.  Weighing all of these factors, it is
my conclusion that petitioner has failed to prove by a
preponderance of the credible evidence that respondent is
an incompetent teacher."

63.  With respect to teaching techniques, there are no absolutes in teaching.

64.  ALVAREZ permitted nonstatistical, nonfactual records to be introduced on

ZWILLENBERG's behalf as "evidence."

65.  ALVAREZ either improperly denied or failed to determine Petitioner's

procedural objections.

66.  For example, in response to Petitioner's procedural objection that the principal

and assistant principal were not personally present in the hearing room so that

their facial expressions and demeanor could be observed,  ALVAREZ stated,

"O.K., my response is – that the Chancellor has ruled that they may be, uh, they

may be present by a speakerphone.  They are present by a speakerphone, so your

objection is denied."

67.  For example, in response to Petitioner's procedural objection that the

documentation packet did not contain facts and statistics,  ALVAREZ stated,

"Well, that – that's – that will be when you present your case.  O.K.?"

68.  Petitioner made a very strong presentation in his behalf at the administrative

hearing which included a number of quotations from his letter of September 16,

2004.  (Exhibit C)

69.   ZWILLENBERG did not cross-examine Petitioner.

70.   ABOUGHAIDA's telephone cross-examination of Petitioner focused on the nature of observation reports.

71.   ALVAREZ asked  ABOUGHAIDA, "Do you have any questions that you would like to ask Mr. Farrell?"

72.   ABOUGHAIDA stated, "Uh, I have only one question.  The – all the observation – they start with a narrative.  Isn't that fact enough of what went inside the classroom?"

73.   ALVAREZ stated, "Say that again."

74.   ABOUGHAIDA stated, "Every single observation starts with a narrative – lesson narrative..."

75.   ALVAREZ interrupted  ABOUGHAIDA with, "Yes."

76.   ABOUGHAIDA continued, "(INDISTINCT)...That is all – does not describe what's in the classroom.  That's the factual part of it.  That's what went inside the classroom.  Isn't that what you're looking for?"

77.   Petitioner responded, "You can take that up with the Courts because they have..."

78.   ALVAREZ interrupted Petitioner with, "No, no, no.  He asked you a question.  And he said, 'Wouldn't you consider – consider the narrative.  These are the facts.'  He said, 'This is – I came in and this is what you were doing.  Isn't that a fact?' "

79.   Petitioner responded, "It's not considered to be so by the Courts.  And they have held that specifically, repeatedly, over a long period of time.  And I am not going to attempt to put my opinion in as opposed to what the Courts have already ruled.  That's something that would have to be changed by the Courts.  And it has very serious and significant ramifications, because if they hold that these things do contain facts, then they have to make them available to the public at large."

80.   ZWILLENBERG stated, "O.K., and for the record, we'll stand on the record.

We believe our record is complete enough to warrant the U-rating."

81.   ALVAREZ stated, "Thank you.  O.K., at this point, uh, they have asked you whatever questions they wanted to ask you. Uh, we're off to the conclusion. Uh, Ms. (INDISTINCT), would you like to make a concluding statement or was that it?"

82.   ZWILLENBERG stated, "That was it."

83.   ALVAREZ stated, "That was it.  O.K.  The UFT advocate now makes a concluding statement."

84.   ALVAREZ denied Petitioner's right to due process, and violated Bylaw 4.3.3 of the Respondent PANEL FOR EDUCATIONAL POLICY OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK by not permitting his witnesses to testify.  (Exhibit D)

85.   Petitioner stated, "My other witness has also arrived – Mr. Scott."

86.   ALVAREZ stated, "We had agreed to only one, and that was the one that..."

87.   Petitioner stated, "He's on the list."

88.   ALVAREZ stated, "I don't care.  We weren't notified.  (TO MR. SCOTT:) Please stay outside".

89.   ALVAREZ was flagrantly biased in favor of ZWILLENBERG, and made an off-the-record remark, after the conclusion of the hearing, "You can't dispute what a principal says."

90.   Upon information and belief, Betsy Combier went to CAPUTO's office to find out why she and Mr. Scott couldn't testify. See Ms. Combier's letter of December 29, 2004.  (Exhibit G)

91.   Upon information and belief, CAPUTO indicated that she was never informed in advance of the names of any witnesses.  (Exhibit G)

92.   The statement is at odds with the fact that my September 16, 2004 letter, a copy of which had been sent to CAPUTO, contained the names of my potential witnesses. (Exhibit C)

93.  Upon information and belief, CAPUTO refused to produce any records that would support her assertions.  (Exhibit G)

94.  Upon information and belief, Ms. Combier went to GREG BROOKS' office to inquire about the same matter.  (Exhibit G)

95.  Upon information and belief, BROOKS is the Deputy Director of the Office of Appeals and Reviews, and, as such, is CAPUTO's second in command.

96.  Upon information and belief, BROOKS reiterated substantially the same information that had been given to Ms. Combier by CAPUTO.

97.  Even though Petitioner had advised CAPUTO of the names of the anticipated witnesses in a September 16, 2004 letter, on November 3, 2004, Sandra Dunn-Yules of the Queens United Federation of Teachers had again advised CAPUTO of the names of the anticipated witnesses.
(Exhibit F)

98.  The next day, on November 4, 2004, CAPUTO faxed Ms. Dunn-Yules a reply informing her of the Office of Appeals and Reviews' witness policy.  (Exhibit F)

99.  A November 29, 2004 letter was issued which purported to be from CARMEN FARIÑA.  (Exhibit F)

100.  Petitioner did not receive this letter until December 3, 2004.

101.  The letter denied Petitioner's appeal and sustained the U-rating.

102.  Upon information and belief, the letter was not personally signed by FARIÑA, but rather by some unknown individual using an initialed signature.

103.  On December 14, 2004, Petitioner appealed the November 29, 2004 decision letter, and some related matters, to Respondent JOEL I. KLEIN, and others involved in the OAR matter.   (Exhibit F)

104.  On December 29, 2004, Petitioner picked up two copies of the tape recording of his administrative hearing from the Office of Appeals and Reviews.

105.  Petitioner will make a tape available to the Commissioner upon request.

106.  As of today's date, Petitioner has received no response to his December 14, 2004

13

letter.

**WHEREFORE**, Petitioner respectfully requests:

1. The Commissioner of Education order Respondent KLEIN to vacate Petitioner's "Unsatisfactory" rating, and to direct that a "Satisfactory" rating be substituted therefor.

2. The Commissioner of Education order PANEL FOR EDUCATIONAL POLICY to take all necessary actions to promptly implement §100.2(o)(2) of the Regulations of the Commissioner of Education.

3. The Commissioner of Education order PANEL FOR EDUCATIONAL POLICY to revise its By-laws to ensure that employees receive due process at administrative reviews.

4. The Commissioner of Education order CAPUTO to revise the staff manuals of the Office of Appeals and Reviews so that employees and Union officials are accorded, and are properly informed of, due process procedures.

5. The Commissioner of Education order  audits of the PANEL FOR EDUCATIONAL POLICY to ensure that §100.2(o)(2) of the Commissioner's Regulations is being fully complied with, to forward one copy of the report of each audit to the New York State Education Department, and to post the audit reports on New York City's official Website.

6. The Commissioner of Education order the PANEL FOR EDUCATIONAL POLICY to revise its By-laws to ensure that teachers are furnished a copy of the hearing panel report, and that they be given an appropriate time period to respond in writing, before the report is forwarded to the Chancellor for final decision on the matter.

7. The Commissioner of Education order Respondent KLEIN to ensure that either he, personally, or his designee, personally, sign decision letters in the future, and

14

that no initialed signatures are permissible.

8. The Commissioner order  PANEL FOR EDUCATIONAL POLICY to develop written procedures guaranteeing that the decision of the Chancellor, or the Chancellor's designee, is appealable to the full Panel, in a manner reflective of fundamental due process.

9. An opportunity to present oral argument before the Commissioner.  **YES**

10. Such other relief as the Commissioner deems just and proper.


Dated:  December 30, 2004


Edmond Farrell, *pro se*
10 Dean Street
East Rockaway, New York 11563

(516) 593-7805

15

# Exhibit K

**From:** Albania Sepulveda <ASepulveda@uft.org>
**To:** 'Lucio' <enzo0mad@aol.com>
**Subject:** Missing documents
**Date:** Wed, Aug 12, 2015 5:29 pm

Hi Lucio,

In reviewing your case file, there is a formal observation report in the package of documents dated 4/23/14. It appears to be missing some pages. Is so can you please provide me with copy of it. Also, please let me know what was edited in the recording of the hearing? Please provide proof of it. Do you have the unedited tape? Please bring us copy.  Thanks.

*Bonnie Sepulveda*
*Special Representative*
*UFT Bronx Borough Office*
*2500 Halsey Street*
*Bronx, NY 10461*
*718 379-6200*
*718 862-6044*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# Exhibit L

[address obscured]
Ave.
Bronx, NY 10469-5523

UFT Case# X57571

Dear Mr. Celli,

Your appeal to the Ad Com Grievance Committee on the above case number was heard on February 1, 2016 at 5:00pm @ 50 Broadway, New York, NY 2nd floor Room G. At the Committee meeting, you presented your claim that your evaluator, Mr. Cole created his own rubric to evaluate your performance. The Committee asked to see a copy of the rubric, which you were unable to provide.

After carefully considering the facts presented, the Committee has concluded that your grievance cannot be successfully pursued at the Chancellor's level. Since you were unable to provide documentation to support your claim, the Union cannot overcome the Department of Education's argument that no contractual provisions were violated.

Sincerely,

LeRoy Barr
Director of Staff

LB/sp
Cc: Ellen Gallin Procida

Manhattan Borough Office  52 Broadway, New York, NY 10004  212.598.6800  www.uft.org

Officers: Michael Mulgrew President, Emil Pietromonaco Secretary, Mel Aaronson Treasurer, LeRoy Barr Assistant Secretary, Thomas
Vice Presidents: Karen Alford, Carmen Alvarez, Evelyn DeJesus, Anne Goldman, Janella Hinds, Richard Mantell

# Exhibit M

**From:** Lucio <enzo0mad@aol.com>
**To:** Betsy Combier <betsy.combier@gmail.com>; Harvey400 <harvey400@aol.com>
**Subject:** Fwd: Notice of Claim
**Date:** Thu, Sep 3, 2015 2:42 pm
**Attachments:** notice of claim.pdf (4052K)

---

I read some of it and it's wrong

Sent from my iPhone

Begin forwarded message:

> **From:** Albania Sepulveda <ASepulveda@uft.org>
> **Date:** September 3, 2015 at 2:32:06 PM EDT
> **To:** "'Lucio'" <enzo0mad@aol.com>
> **Subject: Notice of Claim**
>
> Hi Lucio,
>
> Attached please find the notice of claim. It is important that you review, sign and serve the notice of on the New York City Department of Education by September 8[th]. Notices of claim may be served at the NYC Law Department's offices, which are located at 100 Church Street.
>
> Enjoy your Labor Day weekend.
>
> *Bonnie Sepulveda*
> *Special Representative*
> *UFT Bronx Borough Office*
> *2500 Halsey Street*
> *Bronx, NY 10461*
> *718 379-6200*
> *718 862-6044*

*************************************************************************
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
*************************************************************************

-----------------------------------------------------------------------x

In the Matter of the Claim of

LUCIO CELLI,

                             Claimant,                                  **VERIFIED**
                                                                      **NOTICE OF CLAIM**

      -against-

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, and
CARMEN FARINA, in her official capacity as
CHANCELLOR OF THE CITY SCHOOL DISTRICT
OF THE CITY OF NEW YORK,

                                 Respondents.

-----------------------------------------------------------------------x

TO:    BOARD OF EDUCATION OF THE CITY SCHOOL
         DISTRICT OF THE CITY OF NEW YORK
         a/k/a New York City Department of Education
         c/o Office of the Corporation Counsel of the City of New York
         100 Church Street
         New York, New York 10007

         CARMEN FARIÑA, in her official capacity as CHANCELLOR
         of the CITY SCHOOL DISTRICT OF THE CITY OF
         NEW YORK
         c/o Office of the Corporation Counsel of the City of New York
         100 Church Street
         New York, New York 10007

        **PLEASE TAKE NOTICE**, that Lucio Celli ("Claimant"), hereby makes a claim against the

Board of Education of the City School District of the City of New York and Chancellor of the City

School District of the City of New York, Carmen Farina, (hereinafter collectively referred to as

"Respondents"), as follows:

1.      The name and post office address of the Claimant is:

> Lucio Celli
> 2743 Seymour Avenue
> Bronx, NY 10469

2.      The nature of the claim is that Respondents improperly denied Claimant's appeal of his unsatisfactory annual professional performance rating ("U-rating") for the 2013-2014 school year for a per session (evening) class he taught at the Bronx Adult Learning Center during that year and improperly issued him a U-rating.

3.      Claimant is a tenured full-time, New York City public high school teacher. During the 2013-2014 school year, he also taught an adult education class in English Language Arts, as additional "per session" work, at the Bronx Adult Learning Center (the "School"), which is administered by the Office of Adult and Continuing Education and under the jurisdiction of District 79. Principal Anne Bernard was the principal and Claimant's rating officer at the School during the 2013-2014 school year.

4.      On or about June 25, 2014, Claimant received a U-rating on his 2013-2014 annual rating report of per session services.

5.      After Claimant filed an appeal of the U-rating, a hearing was held on or about May 4, 2015, pursuant to the By-laws of the Panel for Educational Policy Section 4.3.1 and Section 4.3.3 of the By-laws of the New York City Department of Education.

6.      At the hearing, the Board submitted three observation reports in support of the U-rating. At least one of the observation reports was not signed by Claimant and, therefore, according to Respondents' own rules and procedures, should not have been considered as a factor when issuing him a U-rating and should not have been admitted into the record at the U-rating appeal hearing. The relevant rules are contained in Respondent's handbook entitled "Rating Pedagogical Starr

Members" (or "Handbook"), a copy of which is attached as Exhibit 1. (*See*, Handbook, pp. 10-11.)

7.      The 2013-2014 school year was the first year that Claimant taught at the School. According to Respondents' rules, Respondents were required to have the Principal of the School formally observe him "near the beginning of the term," as part of the mandated evaluation process. (See, Handbook at p. 7.)  The Principal of the School never performed a formal observation of Claimant at any time during the school year, and the only formal observation that was conducted was conducted by an Assistant Principal on or about May 6, 2014, near the end of the school year.

8.      Respondents' rules and procedures also require formal observations to be performed of a tenured teacher after the teacher is determined to be "in danger of receiving an unsatisfactory rating" and a "prescriptive plan to improve their teaching" provided. (Handbook, p. 7.) The required formal observations were not performed and no "prescriptive plan to improve" Claimant's teaching before issuing a U-rating to him for the year was provided, in violation of Respondents' rules and procedures and as argued by Claimant at his appeal hearing.

9.      According to Respondents' rules governing appeals of U-ratings, Claimant's Rating Officer (the School's Principal) was required to furnish Claimant with a "complete set of documentation used by the Rating Officer to support the reason(s) for the adverse rating" within three weeks of his filing of his appal of the U-rating. (Excerpts of Respondents' rules governing appeals ("The Appeal Process") are attached at Exhibit 2.  The relevant requirements are listed in Section I(A)(a) of The Appeal Process.) As Claimant noted at his appeal hearing, he was not provided with the required complete set of documents and was not provided with the required documents within three weeks of filing his appeal.  Claimant filed his appeal on or about June 27, 2014.

10.    The appeal rules also require Respondents to provide teachers appealing a U-rating a copy of the tape recording that is made of their appeal hearing. (*See*, The Appeal Process (Ex. 2), Section I(B)(2)(a).) Despite repeated requests from Claimant to be provided with a complete recording of his appeal hearing, Respondents have failed to provide him with a complete recording and have, instead, only provided him with a partial recording of the appeal hearing.

11.    The issuance of a U-rating to Claimant, and Respondents' denial of Claimant's appeal of the U-rating and/or sustaining of the U-rating were in violation of Respondents' rules and procedures and therefore arbitrary and capricious, an abuse of discretion, and a violation of duties enjoined upon respondents by law.

12.    The instant claim arose on or about June 8, 2015, when Respondents denied Claimant's appeal and sustained the U-rating, "as a consequence of poor pedagogical practice." (Attached as Exhibit 3 is a copy of the decision denying Claimant's appeal of the U-rating. Attached as Exhibit 4 is a copy of the Rating Report issuing Claimant a U-rating. Attached as Exhibit 5 is a copy of the appeal filed by Claimant.)

13.    This claim is for all relief to which Claimant is entitled, including but not limited to: (a) a declaration that Respondents acted in violation of established policies, procedures, laws and regulations; (b) an order directing Respondents to reverse the U-rating for the 2013-2014 school year, along with the costs, attorney's fees and disbursements for the litigation of this claim; and (c) for such other, further, and different relief as a court may deem just and proper.

Dated: New York, New York
          September 7, 2015


                                                    _____
                                                         Lucio Celli

## VERIFICATION

STATE OF NEW YORK     )
                                  )
BRONX COUNTY           )

      Lucio Celli, being duly sworn, deposes and says:

      I am the Claimant herein; I have read the foregoing Notice of Claim and know the contents

thereof and the same are true to my knowledge, except those matters therein which are stated to be

alleged upon information and belief and as to those matters, I believe them to be true.


                                            _____
                                                  Lucio Celli


Sworn to before me this
\_\_\_\_\_ day of September, 2015


_____
      (NOTARY PUBLIC)

5

EXHIBIT 1

2/20/04

# New York City Public Schools



# Rating Pedagogical Staff Members

### Division of Human Resources
### Center for Recruitment and Professional Development

**Joyce R. Coppin**
*Chief Executive*
**Office of Appeals and Reviews**
**Virginia Caputo, Director**
65 Court Street – Room 717
Brooklyn, New York 11201

D



### The Panel for Education Policy

**Ms. Evita Belmonte**
**Mr. Phillip A. Berry**
**Dr. David C. Chang**
**Mr. Robert Einhorn**
*(Student Advisory Council Member)*
**Ms. Natalie Gomez-Velez**
**Mr. Andrew Gounardes**
*(Student Advisory Council Member)*
**Dr. Ramona Hernandez**
**Ms. Jacqueline Kamin**
**Dr. Augusta Souza Kappner**
**Mr. Joel I. Klein**
**Ms. Susana Torruella Leval**
**Ms. Joan McKeever-Thomas**
**Mr. Richard L. Menschel**
**Ms. Marita Regan**
**Mr. Donald Weber**

*Joel I. Klein*
*Chancellor*

It is the policy of the Department of Education of the City School District of the City of New York not to discriminate on the basis of race, color, creed, religion, national origin, age, disability, marital status, sexual orientation, or gender in its educational programs, activities, and employment policies, and to maintain an environment free of sexual harassment, as required by law. Inquiries regarding compliance with appropriate laws may be directed to the Director, Office of Equal Opportunity, 65 Court Street, Room 923, Brooklyn, NY 11201, Telephone: (718) 935-3320

**New York City Department of Education**

# Rating Pedagogical Staff Members

## Table of Contents

### Foreword

### I Staff Development

A. Rating Officer as a Trainer                                  1
B. Characteristics of Good Teaching                            2

### II Evaluation and Rating

A. Mandate and Timing .                                        4
B. Personnel Subject to Rating                                 4
C. Characterizing an Employee's Service                        5
D. Terminating an Employee                                     5
E. Responsibility for Evaluating Non-Supervisory Personnel     7
F. Responsibility for Evaluating Supervisory Personnel         9
G. Implications of an Adverse Rating                           9
H. Evaluation Forms                                            10
I. Analyzing Documents and Records                             10
J. Constructing a Key                                          13
K. Distribution and Transmittal of the Evaluation Form         13

### Appendix:

A. Examples of Goals and Objectives
B. Suggested Approach to a Written Observation
C. Writing Formal Observation Reports
D. Guide for Written Formal Observation Report of a
Lesson
E. Sample Worksheet for Observation Report
F. Sample Observation Report #1
G. Sample Observation Report #2
H. Sample Letter-in-File
I. Special Circular No. 45, Annual Professional Performance Review
J. New Rating Form for SBST Members

# Foreword

Of paramount importance in the operation of an effective school is the principal's responsibility to ensure adherence to high academic standards and the implementation of sound teaching practices. Consequently, requisites for school leadership include the ability to deliver appropriate staff development services to pedagogical staff, as well as knowledge of exemplary pedagogical methodologies. Moreover, principals must be fully aware of the regulatory parameters subsumed under the rubric of Evaluation and Rating of Pedagogical Staff.

Although the responsibility for evaluating pedagogical and supervisory staff may be implemented in accordance with a variety of strategies, the importance of clear, concise documentation is fundamental to the process. Due to the serious implications of adverse ratings and the imperative to provide satisfactory pedagogical services to students, the need to document the evaluation of an employee's performance is essential.

The admissibility of documents and written criticisms has been defined by contractual language, grievance/arbitration decisions and rulings adjudicated by both the legal system and the State Commissioner of Education. Hence, the principal must be aware of the type and nature of documents which are germane to the evaluation of staff and the need for clear, objectively written statements.

The information contained in this Office of Appeals and Reviews' publication, Rating Pedagogical Staff Members, should be referred to with regularity and consulted by rating officers for the evaluation of all staff. In addition, the Office of Appeals and Reviews is prepared to provide technical assistance to all principals and rating officers upon request.

**Division of Human Resources**                   **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

### RATING PEDAGOGICAL STAFF MEMBERS

**PART I: Staff Development**

Regulations of the Chancellor indicate as one of the duties of a principal that: "He/she shall establish and maintain the highest possible standards of supervision and teaching in the school. Special attention shall be given to the work of substitute teachers, inexperienced teachers, or teachers whose work has been recorded as unsatisfactory. He/she shall keep such cumulative records of assistance rendered as will show what opportunity and assistance such teachers have had to enable them to succeed. Official records of all class inspections and examinations, conferences with teachers and of such other matters as may be deemed necessary shall also be kept. Assistants to principals shall be required to keep similar records of their work."

**A. Rating Officer as a Trainer**

To develop and maintain the maximum potential of each pedagogical employee, the principal and other rating team members should:

1. Become involved in the observation and training of those who show a need for more attention than the average.

2. Make formal and informal visits.

3. Make the employees aware of their existing strengths and deficiencies.

4. Characterize each formal observation of the employee's performance as Satisfactory or Unsatisfactory and indicate why this is so.

5. Follow each formal observation with a conference and written report as soon as practicable.

6. Provide a planned program for improvement with attainable goals.

7. Communicate, on a continuing basis, concerning progress or lack of progress.

8. Advise the employee in writing of the consequences of failure to improve.

9. Demonstrate understanding, patience, respect and a professional attitude at each step of this training.

10. Commit to writing all phases of the above-described program and see that all material is properly acknowledged and placed in the official file



*Division of Human Resources*                    *Office of Appeals and Reviews*
*Center for Recruitment and Professional Development*

## B. Characteristics of Good Teaching

The following has been excerpted from "Teaching for the 21st Century" which defines various skills found in effective classroom management. Rating Officers as well as teachers, parents, superintendents, community school board members and educational advocate groups have mutually agreed upon the following characteristics of good teaching:

**Demonstrates Classroom Management Skills**

Teacher has an organized approach to classroom learning, effective classroom management skills, and is able to pace the curriculum. Teacher sets appropriate behavioral standards and enforces them consistently.

**Engages Students in Learning**

Teacher motivates students to be continually engaged in learning activities. Teacher has knowledge of child development and corresponding age characteristics and needs. Teacher is responsive to individual student learning styles, knowledgeable about varied instructional strategies and materials, and makes appropriate decisions about how to use them. Teacher relates the curriculum to the appropriate learning context. Teacher strives to meet the needs and abilities of the classroom student population.

**Encourages Parent Involvement**

Teacher is sensitive to and respects the diversity of parents' native languages and cultures. Teacher is pro-active in reaching out to communicate with parents and involve them in classroom and school-wide activities as well as other forms of parent involvement. Teacher has awareness of and sensitivity to students' family circumstances.

**Fosters Professional Collegiality**

Teacher respects other teachers' styles of teaching and has a collegial approach to working with school staff and community, sharing effective practices, engaging in problem- solving, and similar activities.

**Maintains an Ongoing Commitment to Leaning**

Teacher stays current with educational research and trends in subject areas. Teacher is open to learning new approaches and techniques and sharing information with colleagues. Teacher has enthusiasm for learning and is able to reflect and grow as a professional. Teacher makes use of community and other outside resources both for student growth and own professional growth.

**Possesses Knowledge of Subject Matter**

Teacher has command of subject matter and uses appropriate instructional materials. Teacher is able to present information in a clear and effective manner.

*Division of Human Resources*                              *Office of Appeals and Reviews*
*Center for Recruitment and Professional Development*

**Promotes Positive Student Learning Outcomes**

Teacher has high expectations for all students. Teacher recognizes and develops instructional strategies appropriate for individual student learning styles, language proficiency, cultural background, and disabling conditions. Teacher regularly assesses student learning and adjusts instruction according to evidence of student growth. Teacher strives to realize educational goals set for students.

**Recognizes the Importance of Students' Diverse Cultural Backgrounds**

Teacher respects and supports differences among students' languages and cultural backgrounds, and encourages mutual respect in the classroom. Teacher integrates curricula, instructional strategies, assessment, and support services with appropriate language and cultural contexts. Teacher acknowledges the importance of students' diverse cultural backgrounds in all aspects of classroom teaching.

**Responds to Different Student Learning Behaviors**

Teacher shows flexibility and has the ability to adapt to different modes of student learning. Teacher facilitates students' progress in acquiring their own knowledge and developing their own thinking skills. Teacher shows creativity and imagination; challenges and encourages students to explore and build on their knowledge. Teacher is innovative, willing to experiment and take risks.

**Supports an Atmosphere of Mutual Respect**

Teacher sets a good example for students: punctual, courteous, concerned about others, and so on. Teacher respects each student as an individual and encourages mutual respect in the classroom. Teachers listens and pays attention to what students are saying; respects individual learning styles as well as cultural diversity, language differences, and disabling conditions.

## PART II: Evaluation and Rating

### A. Mandate and Timing

The mandate for the evaluation of employees and the timing thereof is contained in Section 89, Subdivisions 7 and 7a, of the regulation which states: "7. Within the last ten school days of each school year and not fewer than four school days prior to the close thereof, the principal of each school shall give to each member of his/her staff a signed statement characterizing his/her work as Satisfactory or Unsatisfactory; or, in the case of a teacher or supervisor on probation whose probationary period will extend more than one year, the principal may use the rating of "D," i.e. "Doubtful" during the first year of such probationary period, if, in his/her judgment, such rating best describes the teacher's or supervisor's service. A Certification of Unsatisfactory or Doubtful work shall be accompanied by appropriate supporting data."

**Division of Human Resources**                    **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

"7a. In the case of a teacher or supervisor whose assignment to a given school has covered at least twenty (20) school days since the beginning of the school year, and is terminated at some time other than the last day of the school year, the principal of such school shall give to such teacher or supervisor not later than four school days following the last day of service in such school a signed statement characterizing his/her work as Satisfactory or Unsatisfactory. If the service is rendered during the first year of a three-year probationary period, the rating of "Doubtful" may be used. This statement shall cover the period of service in such school. The certification of Unsatisfactory or Doubtful work shall be accompanied by appropriate supporting data."

**Note 1:**   An employee on an officially sanctioned leave of absence is to be rated as though present in the school, office, bureau or unit.

**Note 2:**   An employee hired for the September-to-January semester is to be issued a rating within four (4) school days of the termination of the service.

**Note 3:** A rating Officer may issue an Unsatisfactory rating even if the employee's services do not extend to "at least twenty (20) school days."

## B. Personnel Subject to Rating

Section 100.2 (0) of new Part 100 of the Commissioner's Regulations mandates that all professional personnel, except evening school teachers of non-academic, vocational subjects, be reviewed annually beginning September, 1986.

## C. Characterizing an Employee's Service

Written statements are issued to employees to characterize their service during the rating period as Satisfactory, Unsatisfactory or Doubtful depending on the Rating Officer's judgment.

The characterization of an employee's service as Satisfactory indicates that he/she has demonstrated sufficient competence or improvement and a willingness to learn. If such has not been the case, ratings of Unsatisfactory or Doubtful should be used.

In arriving at the rating, all events, incidents and staff development activities which occurred during the rating period should be taken into account. The criteria to be used for the evaluation should include personal and professional growth, pupil guidance and instruction, classroom management, participation in school and community activities and attendance and lateness. The most efficient procedure with which to accomplish this evaluation would be careful perusal of the relevant materials contained in the file.

*Division of Human Resources*                    *Office of Appeals and Reviews*
*Center for Recruitment and Professional Development*

## D. Terminating an Employee

It is important to note that employees, including PPT's and CPT's, whose unsatisfactory performance has been documented, may be rated "Unsatisfactory" and may be terminated based on this documentation.

All employees may be rated "Unsatisfactory" and terminated for "cause." In the case of tenured teachers, this is addressed at 3020A proceedings. In the case of probationers, PPT's and CPT's, it is addressed at "U" rating hearings, Discontinuance/Denial hearings or C-31 termination appeals.

The Rating Officer should incorporate, but is not limited to, the following methods and activities in the rating process:

1. Classroom observations
2. "Pre" and "Post" observation conferences
3. Buddy teacher system
4. Inter-visitation with colleagues
5. Ladder of discipline
6. Model lesson demonstrations
7. College courses
8. In-house workshops
9. A written warning to the employee that failure to improve may result in:

- An "Unsatisfactory" rating,
- Doubtful rating (for first year probationers),
- Termination of Service
- Discontinuance of Probationary Service and/or
- Denial of Certification of Completion of Probation.

## E. Responsibility for Evaluating Non-Supervisory Personnel

**Performance Review Model**

As per the guidelines for Annual Performance Reviews in the manual "Teaching for the 21st Century," teachers and supervisors will be able to decide upon one of the two options listed below or a combination thereof to evaluate performance:

### Component A: Annual Performance Options

New York State's "A New Compact for Learning" encourages a broad range of teaching and learning strategies, e.g. performance-based assessments, team teaching, interdisciplinary courses, and other "alternative" organizational approaches to meet student needs and ensure that students meet desired learning outcomes.

**Division of Human Resources**                    **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

To encourage teachers' ongoing professional growth and the use of innovative instructional approaches, a satisfactory, tenured teacher in conjunction with his or her supervisor may choose an annual performance option as the basis of the teacher's yearly performance review.

Annual performance options should both further a teacher's professional growth and be related to:

- The Characteristics of Good Teaching
- School-based Educational Goals and Objectives
- Outcomes Expected in Terms of Student Performance
- Classroom Instructional Strategies, and/or
- Individual Teacher Needs Assessments

Teachers should prepare a brief written statement describing their annual performance option in terms of their own goal(s) and objectives for the school year (see hypothetical examples that follow). At the end of the year, the impact of these activities on their teaching and students should also be summarized and evaluated. Please see Appendix A for "Examples of Goals and Objectives."

Objectives related to specific goals may include such activities as:

- Conference and workshops
- University or in-service courses
- Clinical supervision
- Classroom visits
- Portfolios
- Student and parent feedback
- Voluntary videotaping of classroom teaching
- Other appropriate activities

Activities may also include two or more teachers working together to support each other through mentoring, team teaching, and other collegial efforts.

A teacher's goals and objectives should be achievable within the context of a school's and /or district's resources. To support teachers in realizing their objectives through the school year, a school must provide opportunities for discussion among teachers and supervisors, such as mid-year conferences and informal classroom visits.

As part of the performance review process, teachers must provide appropriate brief documentation, e.g. a summary report, describing the activities they have pursued to realize their objectives.

With the principal's concurrence, teachers at other levels of experience and/or expertise may also choose annual performance options as part of their performance review.

*Division of Human Resources*                    *Office of Appeals and Reviews*
*Center for Recruitment and Professional Development*

**Component B: Formal Observation**

An observation may be conducted as a single full-period classroom visit or a series of short visits by the principal or supervisor. Discussion between a teacher or supervisor before and after an observation must be built into a school's formal classroom observation process, along with a post-observation conference and written report by the principal or supervisor including prescriptive recommendations for professional growth, where appropriate.

- Satisfactory, tenured teachers may choose Component A or B, or both, with the concurrence of the principal.

- New and probationary teachers, tenured teachers who received an unsatisfactory rating the prior year and tenured teachers who are in danger of receiving an unsatisfactory rating must have formal observations (Component B) by the principal or designee as part of a prescriptive plan to improve their teaching. These teachers may also utilize Component A as part of their performance review, at their principal's discretion.

- Tenured teachers who are new to a school will have a formal observation (Component B) by the school principal near the beginning of the term; after a satisfactory observation, they may then choose Component A or B, or both, for their performance review.

**Community School District, Chancellor's District and Special Education**

For teachers under the jurisdiction of the Community School Districts, the Chancellor's District and the Division of Special Education the following minimum number of required classroom observations is recommended:

Tenured Staff-- One full period or composite per year should be made by the Principal, Assistant Principal or Supervisor of Special Education, where appropriate.

Probationary Teachers and New Teachers-- In a school with no Assistant Principal, two full periods or two composites per year should be made by the Principal. In a school with an Assistant Principal, one full period or composite per year should be made by the Assistant Principal and one full period or composite per year should be made by the Principal. A Supervisor of Special Education will be substituted where appropriate.

Teachers with Special Needs-- As many additional observations as are needed should be made for teachers who have particular needs and for any teacher whose performance is less than satisfactory.

The Principal should observe any teacher for whom an Assistant Principal has submitted a report of an Unsatisfactory observation.

All Staff-- Provisions must be made for a post-observation conference during which the observer is to commend strengths of performance and discuss the need for improvement, if necessary, with each staff person being observed.

***Division of Human Resources***              ***Office of Appeals and Reviews***
***Center for Recruitment and Professional Development***

**High School Staff**

For teachers under the jurisdiction of the high schools, it is recommended that the <u>minimum</u> number of classroom observations be as follows:

<u>Tenured Teachers on Maximum Salary Step</u>-- One full period or one composite per school year is to be made by the Assistant Principal.

<u>Tenured Teachers not yet on Maximum Salary Step</u>-- One full period or one composite per school term is to be made by the Assistant Principal.

<u>Probationary Teachers and New Teachers</u>-- Two full periods or two composites per school term by the Assistant Principal, one full period or one composite per school year by the Principal, and one additional full period or one additional composite per school year to be made by either the Principal or Assistant Principal.

**Non-Supervisory Staff, other than Classroom Teachers, Serving in Community School Districts, Special Education, High Schools or the Chancellor's District.**

For non-supervisory staff other than classroom teachers and school secretaries, the Principal or other Rating Officer, where appropriate, should formally observe a probationary employee performing his or her duties for the equivalent of two full periods per school year. For tenured staff, the formal observation must be made for the equivalent of one full period per school year.

Provision must be made for a follow-up meeting for the observer to commend strengths of performance and discuss the need for improvement, if necessary, with each staff person being observed.

For probationary school secretaries, the Principal or Assistant Principal should have a conference with the secretary and review his or her records twice each school year followed by an <u>official report</u>. For tenured school secretaries, a conference and review of records must be held once each school year followed by an <u>official report</u>.

**F. Responsibility for Evaluating Supervisory Personnel**

<u>Supervisory Performance Planning Reports</u> must be initiated no later than the beginning of the school year. Either late in the spring term of the preceding school year or early in the current school year, usually in the month of September, a conference must be scheduled to establish mutually agreed upon performance goals and specific objectives for the year. The evaluating supervisor and the supervisor to be evaluated must meet at regular intervals during the year to review the objectives, modify them where required and discuss progress toward their achievement. A minimum of two follow-up conferences in addition to the initial goal-setting conference is required.

The evaluating supervisor is required to complete an <u>End-of-Year Summary</u> which includes a summary of the employee's strengths, areas for future concentration, and an indication as to whether or not the employee's performance exceeded expectations, met expectations or was below expectations. Descriptive evaluations are made on the objectives established at the

**Division of Human Resources**            **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

beginning of the school year and during the rating period. See the Office of Appeals and Reviews' publication <u>Principal Performance Review.</u>

## G. Implications of an Adverse Rating

1. Receipt of an Unsatisfactory rating has serious implications. Unsatisfactory performance is a compelling reason for recommending the Discontinuance of Probationary Service or the Denial of Certification of Completion of Probation and for filing charges against tenured employees. It may also impact on an employee's ability to obtain additional licenses.

2. Employees who have not reached their maximum salary also suffer the loss of annual salary increments. However, upon completion of the next year of service with a Satisfactory rating, and upon completion of the prescribed course work (where applicable), the employee shall advance to the increment level that would have been appropriate had there been no rating of Unsatisfactory.

3. Substitute teachers (regular or per-diem) are additionally affected because either receipt of an Unsatisfactory rating is considered sufficient grounds for removal from a position. This removal does not preclude the right to seek employment in different work sites using the same or other license(s) which they possess. It is to be noted that substitutes may receive only a Satisfactory or an Unsatisfactory, <u>never</u> a Doubtful rating.

*Note:* None of the above consequences applies to employees who receive a Doubtful rating.

## H. Evaluation Forms

1. Use appropriate Evaluation Forms (See Appendices I & J)
2. Complete forms supplying all required information
3. Adhere to prescribed time schedules for issuance of forms

         **Note:** Forms may be obtained from the Office of Purchase Management (OPM).

## I. Analyzing Documents and Records

The overall evaluation of the employee's performance requires a careful review of the documents in the file. This thorough analysis is essential since the reasons given for an adverse rating should be reflective of and supported by the written criticisms noted in the file documents.

The admissibility of documents has been clearly delineated by contractual language, grievance and arbitration decisions and rulings handed down by the State Commissioner of Education and the Courts.

1. Items Contained in Files
    Properly maintained files include, but are not limited to, such items as:

**RATING PEDAGOGICAL STAFF MEMBERS**                   **PAGE 9**

**Division of Human Resources**                    **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

    a) Reports of significant, positive or negative actions and activities.

    b) Descriptions of untoward incidents which have been investigated, including statements from witnesses and the employee with a conclusion by the Supervisor.

    c) Reports of observations.

    d) Records of conferences to which the employee was invited or was required to attend

    e) Communications from parents, teachers or others dealing with incidents or matters relating to the employee's service that are attached to a letter from the Supervisor stating his/her conclusions after an investigation was conducted.

    f) Evidence of assistance or training offered.

    *g)* Relevant and significant records which chronicle an employee's performance or service.

    *h)* The employee's written comments to documents in the file, each observation report and any evaluation reports.

2. Cautions About the Files

    a) Material to be placed in a staff member's file must note that it is being placed in the official file and a signature line must be provided for the recipient of the letter; a date line should also be provided.

    b) The employee may append a letter or note of explanation or rebuttal to documents placed in the file. This appended material is considered part of the original document and should be attached permanently thereto.

    c) If the employee refuses to sign a document for the file, a witness should sign a dated statement on the document attesting to this refusal.

    d) Where incidents or particular events have not been witnessed personally by either the Rating Officer or a member of the supervisory or administrative staff, the written record should contain evidence that an investigation was conducted and that the versions of the involved persons concerning the incident or event were taken into account before the Rating Officer drew a final conclusion as to the validity of the alleged facts.

    e) Employees have the right, under contract and within prescribed time limits, to grieve any document which they believe should be removed from their files.

    f) The Rating Officer should remove, replace or amend documents or parts of documents which have successfully been demonstrated to be either unfair or inaccurate through the grievance procedure.

**Division of Human Resources**                    **Office of Appeals and Reviews**
**Center for Recruitment and Professional Development**

3 Letter-in-the-File

    - Please see Appendix H

4. Formal Written Observations

    - Please see Appendices B,C,E,F & G

5. Materials to be Issued After the Appeal

    Note: When duplicating documents, be sure that all dates and signatures are clearly reproduced. Upon Appeal, employees should be issued those documents which the Rating Officer is using to support the reasons for the adverse rating and any relevant departmental, school, district, bureau or unit records issued.

6. Inadmissible Items

Some items are not considered to be admissible at Reviews. Therefore, Rating Officers generally should not use them in response to an Appeal. These include, but are not limited to, such items as:

    a)  Unsigned documents

    b)  Signed documents never intended for inclusion in the file

    c)  Documents or parts of documents which have been removed from the file either voluntarily or as a result of a grievance decision

    d)  Illegible or anonymous material

    e)  Documents describing events which pre or post-date the period of evaluation

    f)  Material not addressed directly to the Appellant, unless it is attached and described, related to, and part of another document appropriate for the file

    g)  Documents dealing with grievance matters filed by the employee

    h)  The employee's medical records

    i)  Official records from former work sites which refer to the quality of the employee's previous service. Records from more than one work site covering probationary service may, in certain circumstances, be admissible.

    j)  Personal records maintained by the present administration for its own use and convenience, i.e. logs, diaries, calendars of events, etc.

Note: These records may be used by the authors to refresh their memory before responding to specific questions during crossexamination at the Review.

RATING PEDAGOGICAL STAFF MEMBERS                              PAGE 11

*Division of Human Resources*                              *Office of Appeals and Reviews*
*Center for Recruitment and Professional Development*

**J. Constructing a Key**

After all the relevant and admissible items have been pulled from the file, the Rating Officer should, in the space provided on the Evaluation Form, key the documentation to those areas characterized as "Unsatisfactory" on that form.

**K. Distribution and Transmittal of the Evaluation Form**

1. When the Rating is Satisfactory

   The Evaluation Form is to be signed by both the Rating Officer and the employee. The original copy is given to the employee, a duplicate is placed in the file and a third copy is sent to the appropriate Superintendent.

2. When the Rating is Doubtful or Unsatisfactory

   The Evaluation Form is to be signed by the Rating Officer and the employee.

   Copies are then distributed as follows:

   a) The original to the employee
   b) A duplicate to the employee's file
   c) A duplicate to the appropriate Superintendent
   d) A duplicate to the Division of Human Resources
             Office of Teacher Records,
             65 Court Street, 8n Floor,
             Brooklyn, NY11201

EXHIBIT 2

# New York City Public Schools



# The Appeal Process

## Division of Human Resources

**Joyce R. Coppin**
*Chief Executive*
**Office of Appeals and Reviews**
**Virginia Caputo, Director**
65 Court Street – Room 717
Brooklyn, New York 11201

# New York City Department of Education

### The Panel for Education Policy

**Ms. Evita Belmonte**
**Mr. Phillip A. Berry**
**Dr. David C. Chang**
**Mr. Robert Einhorn**
*(Student Advisory Council Member)*
**Ms. Natalie Gomez-Velez**
**Mr. Andrew Gounardes**
*(Student Advisory Council Member)*
**Dr. Ramona Hernandez**
**Ms. Jacqueline Kamin**
**Dr. Augusta Souza Kappner**
**Mr. Joel I. Klein**
**Ms. Susana Torruella Leval**
**Ms. Joan McKeever-Thomas**
**Mr. Richard L. Menschel**
**Ms. Marita Regan**
**Mr. Donald Weber**

## Joel I. Klein
*Chancellor*

It is the policy of the Department of Education of the City School District of the City of New York not to discriminate on the basis of race, color, creed, religion, national origin, age, disability, marital status, sexual orientation, or gender in its educational programs, activities, and employment policies, and to maintain an environment free of sexual harassment, as required by law. Inquiries regarding compliance with appropriate laws may be directed to the Director, Office of Equal Opportunity, 65 Court Street, Room 923, Brooklyn, NY 11201, Telephone: (718) 935-3320.

# Appeal From An Adverse Rating

## Table of Contents

### Foreword

### Section I    for All Pedagogical Employees

A. Right to Appeal                                                          1

    1. Notice of Appeal                                            1
    2. Rating Officer's Response to the Appeal                    1
    3. Appellant's Response to Documentation                     2
    4. Response from the Office of Appeals and Reviews            3

B. The Review                                                               3

    1. Before the Review                                          3
    2. At the Review                                              5
    3. After the Review                                           6
    4. The Chancellor's Decision                                 6

### Section II  Rating Employees Who are not Regularly Appointed

A. Staff Development                                                        7
B. Ratings                                                                  7
C. Interruption of Service for Cause                                        7

    1. Regulation of the Chancellor C-31                          7
    2. Acting Supervisors or Administrators                       9

### Section III Special Circumstances of Probationary Service

A. Probationary Service for All Pedagogical Employees                       10

    1. Length of Probationary Period                              10
    2. Evaluation of Probation                                    10
    3. Tenure by "Estoppel" or "Acquiescence"                     13
    4. Involvement by the Superintendent                          13
    5. The Technical Assistance Conference                        13
    6. Review Before the Chancellor's Committee                   14
    7. Actions by the Office of Appeals and Reviews               15
    8. The Review Format                                          15
    9. Chancellor's Committee Report and Recommendation           15
    10. Final District Actions                                    16

## Section IV Performance Planning for Supervisory Personnel

A. The Supervisory Performance Planning Report   17

    1. Initiating the Supervisory Performance Planning Report   17
    2. Setting Goals   17
    3. Developing Performance Objectives   18
    4. Use of The Supervisory Performance Planning Report   18
    5. Monitoring of Objectives   19
    6. End-of-Year Summary   19

## Appendix:

A. Letter of Discontinuance (1)
B. Letter of Discontinuance (2)
C. Letter of Discontinuance (3)
D. Letter of Denial
E. Regulation of the Chancellor C-31
F. Letter of Unsatisfactory Service and Termination
G. Letter of Discontinuance and Termination (1)
H. Letter of Discontinuance and Termination (2)
I. Letter of Denial and Termination

# FOREWORD

Inherent in the By-laws of the New York City Department of Education are the guiding principles of fairness and impartiality regarding a pedagogical employee's rights to appeal an adverse rating.

The Office of Appeals and Reviews' publication, "The Appeal Process," contains important information for Rating Officers as well as Appellants with regard to the procedures conducted before, during and after the Review of any Appeal. Considerations and requirements pertinent to dates (time intervals) and documentation to an Appellant's rights germane to appeal underscore the document. Procedural steps regarding advisors, witnesses, Chancellor's Committee composition, documentation, questioning and cross-examination leading to the Chancellor's decision are listed and documented.

Section II of the Office of Appeals and Reviews User's Guide will be useful to rating officers in determining appropriate procedures and actions necessary for rating employees who are not regularly appointed, i.e. substitute teachers and acting supervisors or administrators. Regulation of the Chancellor C-31 defines the categories of employees under its aegis and explains the provisions and procedures under which it applies to employees who are not regularly appointed. The provisions of C-31 are applied in instances where the teaching or conduct of an employee who is not regularly appointed initiates action by a Superintendent to terminate the employee's license.

Section III provides rating officers with information germane to length of probation, evaluation of probation, technical assistance conferences, review by the Chancellor's Committee and final actions.

The Supervisory Performance Planning Report has been replaced by the Performance Plan for Principals. However, the Supervisory Performance Planning Report remains in effect for all other supervisory personnel. The Supervisory Performance Planning Report was developed to serve a multitude of purposes, the foremost of which is the requirement that Principals, Executive Directors, and other Rating Officers are required to plan for the optimum functioning of the members of their supervisory or administrative staffs and must evaluate their performance based upon these plans and the discharge of their other regular responsibilities. Section IV provides rating officers with critical information regarding setting goals, developing performance objectives, use of the Supervisory Performance Planning Report, on-going follow-up of performance objectives and the completion of the End-of-Year Summary.

The Office of Appeals and Reviews will welcome all requests for technical assistance or clarification concerning the Appeal of an Adverse Rating and can be contacted by telephone at: (718) 935-2991 or by Fax: at (718) 935-2983.

# Section I

## APPEAL FROM AN ADVERSE RATING
## FOR ALL PEDAGOGICAL EMPLOYEES

**A. Right to Appeal**

Employees who received Doubtful or Unsatisfactory ratings may appeal such rating under Section 4.3.3 of the By-laws of the Department of Education.

**1. Notice of Appeal**

    a. The employee may submit a written Appeal to an adverse rating by letter within three (3) weeks, exclusive of the summer vacation, after receiving an Unsatisfactory rating and must send the Appeal, plus a copy of the Evaluation Form to:

Chief Executive
Division of Human Resources

65 Court Street - Room 717
Brooklyn, NY 11201
Attention: Office of Appeals and Reviews

    b. The employee, simultaneously, should mail a copy of the Appeal to the Rating Officer.

    *Note:* From this point on, the employee will be referred to and is considered to be an Appellant.

    c. The Office of Appeals and Reviews will communicate with the Appellant and the Rating Officer, acknowledging receipt of the materials and advising each of the requirements prior to the Review.

**2. Rating Officer's Response to the Appeal**

The Rating Officer is required to respond to the Appeal within three (3) weeks, exclusive of the summer vacation, after being made aware by the Appellant or the Office of Appeals and Reviews that an Appeal has been made.

    a. Documentation

The Appellant is to be furnished with a complete set of the documentation used by the Rating Officer to support the reason(s) for the adverse rating.

    b. Receipt for Materials

Dated postal receipts, as well as a listing and description of the documentation issued, should be obtained by the Rating Officer and sent to the Office of Appeals and Reviews.

c. Materials for the Office of Appeals and Reviews

The Rating Officer must send three (3) sets of the materials and data given to the Appellant and copies of all receipts to the Office of Appeals and Reviews.

## 3. Appellant's Response to Documentation

Upon receipt of the above specified materials, the Appellant has three (3) weeks, exclusive of the summer vacation, in which to respond.

a. Written Answer

The Appellant must file a full, written rebuttal to any of the reasons and documents furnished, and must notify the Office of Appeals and Reviews if any of the documents are being grieved with the Office of Labor Relations. If the Appellant so requests, the scheduling of the Review will be delayed until all grievance steps have been completed. The Appellant is required to file a Waiver Form with the Office of Appeals and Reviews to delay scheduling the Review.

b. Materials to the Rating Officer

Copies of the Appellant's responses are to be served on the Rating Officer, personally or by mail.

c. Materials to the Office of Appeals and Reviews

One (1) copy of the Appellant's rebuttal must be forwarded to the Office of Appeals and Reviews.

*Note:* The Appellant's failure to submit the written rebuttal within the allotted time may be considered a withdrawal of the Appeal.

d. Materials in Grievance

In order to postpone the scheduling of a Review until matters have been resolved in grievance, the Appellant must submit a Waiver Request to the Office of Appeals and Reviews. The Appellant is obligated to notify the Office of Appeals and Reviews as soon as the grievance matter has been decided.

## 4. Response From the Office of Appeals and Reviews

After materials have been received from the Rating Officer and Appellant, the Chancellor's Committee is selected and the Review is scheduled. The Appellant, Rating Office and other required individuals are notified at least one week in advance of the date, time and place of the Review. The Appellant is made aware that he/she is entitled to appear in person, be accompanied and advised by a Department of Education employee or Union representative, call witnesses and also introduce any relevant evidence.

## B. The Review

**1. Before the Review**

a. The Appellant's Advisor

The Appellant has the right to be accompanied and advised by a person of his/her choice. The use of advisors is governed by certain requirements and conditions established in Article 4 Section 4.3.3 of the By-laws of the Department of Education.

- The advisor may be an employee of the Department of Education or a representative of the Union recognized as the bargaining agent.

- In accordance with the By-laws the advisor may *not* be an attorney.

- The advisor may not serve in more than two Review matters per school year (September-June).

- No persons in the employ of the Department of Education may accept, directly or indirectly, any remuneration or other consideration for his/her services as advisor or witness.

- If the advisor is a Department of Education employee, his/her attendance at a Review is not deemed to be an absence from official duty and substitutes may be employed for the period of the review, where permitted.

b. The Appellant's Witnesses

- The Appellant has the right to call witnesses.

- Within one week prior to be scheduled date of the Review, the Appellant must notify the Office of Appeals and Reviews of the name, work site and position of all persons who have agreed to appear as witnesses.

*Note:* If any of these witnesses are Department of Education employees, their attendance at the Review is not deemed to be an absence from official duty and substitutes may be employed, where permitted.

c. Persons Accompanying the Rating Officer

At the Review the Rating Officer may be accompanied by any supervisor or member of the Rating Team. This individual should have had some involvement in the supervision or training of the Appellant and should have written material that is included in the documentation. He or she will be permitted to participate fully at the Review.

d. Witnesses for the Rating Officer

The Rating Officer may summon other individuals as witnesses who can offer testimony concerning the matters under Review.

**Note:** If any of these witnesses are Department of Education employees, their attendance at the Review is not deemed to be an absence from official duty and substitutes may be employed, where permitted.

    e. Composition of the Chancellor's Committee

- The Chancellor's Committee may consist of one or more persons at the Chancellor's discretion.

- Chairpersons and Committee members may be individuals assigned to the Office of Appeals and Reviews or may be brought in as consultants for this purpose.

- Committee members who would be unable to render an impartial decision are required to disqualify themselves immediately and to notify the Office of Appeals and Reviews so that they may be replaced.

- Committee members must maintain strict and continuing confidentiality about any matters discussed during the Review or during the deliberation periods and about any information contained in the report.

## 2. At the Review

    a. Record of the Proceedings

Proceedings are recorded and the tapes become part of the official record. Copies of the tapes of the Review are available to the Appellant, upon request, at a cost of $10.00 per tape in the form of a Postal Money Order or a check made out to the New York City Department of Education.

    b. Start of the Review

The review is formally opened by the Chairperson who asks the participants to introduce themselves and state the capacity in which they are present.

    c. Procedural Matters

Procedural objections are offered at the outset of the Review and rulings made by the Chairperson become part of the official record.

    d. Witnesses

Major participants at the Review may present appropriate witnesses on their behalf.

    e. Presentations

- The Rating Officer may stand on the written record or make oral statements with respect to supervisory involvement, the Statement of Reasons, the supporting documents previously submitted and may also present witnesses.

- The Superintendent or designee has the same presentation rights as the Rating officer.

- The Appellant or advisor may stand on the rebuttal, or make an oral presentation and introduce any relevant evidence or witnesses on his/her behalf.

f. Questioning and Cross-Examination

Persons participating at Reviews are subject to direct questioning by members of the Committee and are subject to cross examination on their testimony.

Note: The chairperson will designate who and when someone is to cross-examine and determine relevance of the question.

### 3. After the Review

Following the Review, the Chancellor's Committee meets for a period of deliberation and writes a confidential report containing the findings and the rationale for the recommendation. The report is countersigned by the Chief Executive Director, Division of Human Resources/ , who then forwards it to the Chancellor.

The Chancellor's Committee recommends either a denial of the Appeal, which sustains the adverse rating, or a granting of the Appeal which results in the reversal of the Adverse rating on all school, district and central headquarters' records. The issuance of a new overall evaluation is required of the Rating Officer. The revised rating sheet must be signed by the principal and the appropriate Superintendent and should be forwarded to the Office of Appeals and Reviews with copies to the Office of Teacher Records, the Office of Field Services and the Renewal Unit (all of which are located at 65 Court St.).

### 4. The Chancellor's Decision

The final determination is made by the Chancellor. This decision is made known to all concerned parties.

EXHIBIT 3



**Department of Education**
*Carmen Fariña, Chancellor*

June 8, 2015

Date of Review: May 4, 2015

Mr. Lucio Celli, File Number 765918
2743 Seymour Avenue
Bronx, New York 10469

Dear Mr. Celli:

Please be advised that the appeal of your rating of "Unsatisfactory" for the per session period ending June, 2014 has been denied and the said rating is sustained as a consequence of poor pedagogical practices.

Sincerely,

Philip Weinberg
Deputy Chancellor for Teaching and Learning
(Designee for Carmen Fariña, Chancellor)

PW:pal
C:
Office of Field Services
Office of Pedagogic Compensation
Office of Teacher Records
Superintendent: Ms. Rose-Marie Mills, District 79
Rating Officer: Ms. Anne Bernard, Principal, Office of Adult and Continuing Education – Emolior Academy
UFT Borough: Bronx
UFT Headquarters

EXHIBIT 4

*1.0*

# Department of Education of the City of New York
## Individual Rating Report
## Of Per Session Services

File No. ___765918_ _____

Name _____Lucio Celli_____ License ___ _____

School _____OACE-BxALC_____ Borough __BX_____ Activity _____

Rating For Period From _9/24/2013___ to __6/25/14__ Rating S or U__ __U__

No. of Sessions Served _____74____ Years of Consecutive Service __1_____
As of 5/31/14                                              (including Current Term)

No. of Days Absent ____17_____   No. of Times Late _____6_____

Present Salary Rate $ _41.90_____   Per ____hr_____

                                                                    Supervisor

## <u>Regulations</u>

**Within the last five days of the session, but prior to the last school day thereof, the rating officer must complete three copies of this rating report.**

Original –        To be given Employee
Duplicate       To ISC Deputy Director for Human Resources
Duplicate       To be placed in the files of this activity in the school

FORM OP150

EXHIBIT 5

NYC Department of Education
65 Court Street
Brooklyn, NY 11201

Home Address: *2743 Seymour Ave Bx, NY 10469*

Date: *6/27/14*

I hereby submit an appeal for the following reasons: (check appropriate category (ies)

☑ U-Rating
☐ C-31
☐ Denial of Probation
☐ Discontinuance

Please indicate if member is a rotational ATR:   ☐ Yes   ☐ No

Name: *Lucio Celli*

File Number: *765918*

School/District: *Dist 79*

School Address: *3450 East Tremont. Ave*

Principal: *Ms. Bernard*

For School Year Ending: *2014*

Signature: *[signature]*

Contact Phone Number: *646-734-3899*

Cc: Jose Vargas
    Bronx Borough Representative

# Exhibit N

**From:** Mary Atkinson <MAtkinson@uft.org>
**To:** 'Lucio' <enzo0mad@aol.com>
**Subject:** Lucio Celli Stipulation Offer from OLR
**Date:** Thu, Oct 15, 2015 3:01 pm

Hello Lucio,

I spoke to the Chancellor's representative today at OLR about the grievance conference you had last week. He made an offer to settle and asked me to find out if you would be interested in the offer. He indicates that the DOE is willing to grant you a new appeal hearing for the per session u-rating you received if you will agree to withdraw your PERB complaint as well as all of your grievances that relate in any way to the u-rating appeal.

Please let me know if you are interested in this proposed settlement. If you are, the Chancellor's representative will draft a stipulation and you and I will be able to review it and discuss it before signing anything.

Thank you,

Mary Atkinson
UFT Special Representative
Bronx Borough Office
718-379-6200

***********************************************************************
The views, opinions, and judgments expressed in this message are solely those of the author. The message contents have not been reviewed or approved by the UFT.
***********************************************************************